Robinson, J.
 

 This is an original action in this court, brought on relation of the incumbent judges of the municipal court of Toledo and the incumbent clerk of that court, to require the county commissioners of Lucas county to provide a place for the housing of the municipal court of the city of Toledo, the relators specifically disclaiming any purpose to question the constitutionality of the act creating such municipal court. The act is Sections 1579-276 to 1579-329, inclusive, General Code. The constitutionality of Section 1579-279 is by these proceedings questioned. That section reads:
 

 “The council of the city of Toledo shall provide suitable accommodations for the municipal court and its officers, including a private room for each judge
 
 *598
 
 and sufficient jury room. It shall also provide for the use of the court complete sets of the reports of the supreme and inferior courts of the state and such other boohs as the judges of the municipal court may from time to time deem necessary, and shall provide for each court room the latest edition of the General Code of Ohio, and necessary supplies, including telephones, stationery, furniture, booh typewriters, typewriters, heat, light, and janitor service. ’ ’
 

 It is somewhat difficult to ascertain and fairly state the claim of the relators in this case. They concede the power of the Legislature to require counties to provide suitable quarters for housing their several courts, probate, common pleas, and appeals, and say that such power arises out of the fact that the county is a branch and an agency of the state government, and that a municipality is not a branch or an agency of the state government, because, by Section 3 of Article XVIII of the Constitution of the state, the sovereignty of the state has been surrendered to municipalities within their territorial boundaries. They contend that the municipal court of the city of Toledo is a state court, and concede the power of the Legislature to create it, and to define its territorial jurisdiction generally as coextensive with the territory of the municipality; but they say, notwithstanding the fact that the Legislature has the power to create the court and to limit its territorial jurisdiction to the boundaries of the municipality, that the provision of Section 1579-279, General Code, that the municipality shall house such court, invades the sovereign right of such municipality. If their premises in respect to
 
 *599
 
 the relationship of the municipality to the state are false, they present no argument in support of their application for the writ.
 

 The state has always bestowed upon municipalities governmental powers not bestowed upon other of its political subdivisions, and, to the end that there might be more permanency and stability in the character and extent of such power, and to impose upon the local government of such municipalities a greater responsibility to their electorate, it in 1912 conferred a moiety of such power by the Constitution; but it did not by that instrument relinquish all sovereignty over municipalities or confer upon them all sovereign power, but limited the sovereign power relinquished and conferred to that of local self-government and the power to enact local police regulations not in conflict with general law. By Section 1, Article IV, of the same instrument, the power to create such courts is specifically conferred upon the legislative branch of the state government.
 
 State, ex rel. Cherrington, Pros. Atty.,
 
 v.
 
 Hutsinpiller,
 
 112 Ohio St., 468, 147 N. E., 647.
 

 The power to create a court necessarily includes the power to define its jurisdiction and to provide for its maintenance. By the adoption of Section 3 of Article XVTII the state did not cede the territory of the municipalities to other sovereigns, but only surrendered to the inhabitants of such territory the sovereign right to locally govern themselves, and as to all sovereign powers not thus surrendered the sovereignty of the state over such territory remained supreme, and the municipalities remained, as they theretofore had been, political subdivisions of the state, agencies through which the state ad
 
 *600
 
 ministered its government. This theory of the relationship of the municipalities to the state, and the respective sovereign powers of each, has been considered and necessarily decided by this court in a number of cases.
 
 Billings
 
 v.
 
 Cleveland Railway Co.,
 
 92 Ohio St., 478, 111 N. E., 155;
 
 Cleveland Telephone Co.
 
 v.
 
 City of Cleveland,
 
 98 Ohio St., 358, 121 N. E., 701;
 
 Niehaus, Bldg. Inspector,
 
 v.
 
 State, ex rel. Bd. of Education of City School Dist. of Dayton,
 
 111 Ohio St., 47, 144 N. E., 433;
 
 State, ex rel.,
 
 v.
 
 Hutsinpiller, supra; Cincinnati
 
 v.
 
 American Telephone & Telegraph Co.,
 
 112 Ohio St., 493, 147 N. E., 806;
 
 City of East Cleveland
 
 v.
 
 Bd. of Education of City School Dist. of East Cleveland,
 
 112 Ohio St., 612, 148 N. E., 350;
 
 Lorain St. Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 68, 148 N. E., 577. But such construction has seemed so obvious that it has not heretofore been carried into the syllabus of any case.
 

 The city of Toledo adopted a charter and provided for itself a form of local self-government. It was empowered by the Legislature to provide for the election of a mayor and a police judge, with magisterial powers and jurisdiction of cases arising out of the violation of the ordinances of the municipality. It was not content with such a court. It sought the aid of the only body having the power to create for it such a court as it desired, and now has, by virtue of the enactment of Sections 1579-276 to 1579-329, inclusive, General Code, a court that has, in addition to magisterial powers and jurisdiction in cases arising out of the violation of the ordinances of the municipality, certain other jurisdictions within the city of Toledo theretofore exer
 
 *601
 
 eised only by a court of general jurisdiction, and such jurisdiction without the city of Toledo as is necessarily essential to the proper administration of its jurisdiction within the city, and such jurisdiction coextensive with the county of Lucas as has been or hereafter may be conferred upon justices of the peace in the county in which they are elected.
 

 The extraterritorial jurisdiction of the municipal court of the city of Toledo is not materially different from the extraterritorial jurisdiction of the probate court, court of common pleas, and Court of Appeals. It is that jurisdiction that is essential to the administration of the jurisdiction within the territory of the city, plus the nonessential jurisdiction conferred by paragraph 5 of Section 1579-289, General Code.
 

 A municipality is a political subdivision of the state, and, with the exception of the power of local self-government extended to it by Section 3 of Article XVIII, which does not include the power to create courts, is subject to the same sovereignty of the state as the other political subdivisions of the state. To deny the Legislature the power to require a political subdivision to house courts whose jurisdiction is, generally speaking, coextensive with such subdivision, would necessitate denying the power of the Legislature to require the counties to house those courts whose jurisdiction is coextensive with the county. It has been the practice of the state from the date of the organization of the state, to require counties to provide courthouses, with courtrooms and other suitable facilities for the housing of the respective courts of the respective county political subdivisions; and such has been the prac
 
 *602
 
 tice, in so far as we know, in all other jurisdictions. Whether it amounts to an imposition of a burden upon a political subdivision of the state which ought to be borne by the state alone is a question of policy rather than of power, and violates no provision of the state Constitution.
 

 Many of the functions of local officials elected by the electors of political subdivisions of the state are functions imposed by the state in the preservation and the administration of its sovereignty over that portion of the state included in such subdivision. The requirement that such officials be maintained by such subdivision is an equitable distribution of the expense of state government among the state’s political subdivisions. The power conferred upon municipalities to locally govern themselves does not exempt such municipalities from the same burden as is imposed upon other subdivisions of maintaining, over that part of the state lying within their boundaries, such offices and officers as are necessary to the preservation of the sovereignty of the state.
 

 The power to create courts inferior to the Courts of Appeals having been specifically conferred upon the legislative branch of the state government by the Constitution, and the power to create a court necessarily including the power to define its jurisdiction and to provide for its maintenance, and, it having been held by this court in the case of
 
 State, ex rel.,
 
 v.
 
 Hutsinpiller, supra,
 
 that the conferring of such power upon the legislative branch of the government precludes the bestowal of such power upon municipalities by any of the provisions of Article XVIII of the Constitution, it follows not
 
 *603
 
 only that the power to provide for the maintenance of courts inferior to Courts of Appeals, of municipalities, by municipalities, is conferred upon-the Legislature by the Constitution, but that, independent of the provisions of Section 1 of Article IV, by reason of the fact that municipalities are political subdivisions of the state, the Legislature has the same power to require of them that they shall maintain the courts of their territorial jurisdictions that it has to require of the counties that they maintain the courts of their territorial jurisdictions.
 

 Writ denied.
 

 Marshall, C. J., Kinkade, Jones, Matthias, Day and Allen, JJ., concur.