A decree may be presented in accordance with this opinion.

*Decree accordingly.*

Ross, P. J., Hildebrant and Matthews, JJ., concur in the syllabus, opinion and judgment.

Bond et al., Appellees, *v.* Littleton et al., Appellants.

(No. 556—Decided May 10, 1949.)

*Mr. Emory F. Smith,* for appellees.
*Mr. Lowell C. Thompson,* for appellants.

METCALF, J. This is an appeal on questions of law from the Court of Common Pleas of Scioto County, wherein certain members of the fire department of the city of Portsmouth, plaintiffs, appellees, brought suit against the city manager, the chief of the fire department and the city of Portsmouth asking that the defendants be restrained from requiring the plaintiffs to work longer than eight hours in any one day or more than forty-eight hours in any week.

The trial court found in favor of the plaintiffs and granted the injunction prayed for.

The fire department of the city of Portsmouth and all the firemen of that department have been for considerable time and are now operating under the two platoon system as provided by Section 17-1a, General Code. This section reads:

"It shall be the duty of the chief of the fire department of each city, unless said city is exempt from this provision as hereinafter stated, to divide the uniform force into not less than two platoons, and where the uniform force is so divided into two platoons the said chief shall keep a platoon of the uniform force on duty twenty-four consecutive hours, after which the platoon serving twenty-four hours shall be allowed to remain off duty for at least twenty-four consecutive hours, except in cases of extraordinary emergency. Each individual member of the platoon in addition to receiving a minimum of twenty-four hours off duty in each period of forty-eight hours shall receive an additional period of twenty-four consecutive hours off duty in each period of fourteen days so that no individual member shall be on duty more than a total of one hundred and forty-four hours in any period of fourteen days. The chief of the fire department shall arrange the schedule of working hours to comply with the provisions of this section. In each city all

employees of the fire department shall be given not less than two weeks' leave of absence annually, with full pay. The provisions of this section relating to the off duty periods shall not apply to any city that may have adopted or may hereafter adopt the eight hour regulation for its fire department, but the provisions relating to the two weeks' leave of absence shall apply thereto.''

The city of Portsmouth has the charter form of government and Section 164 of the charter reads:

''Hours of Labor.

''Section 164. Except in the case of extraordinary emergencies, not to exceed eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work, for any city employe of the city of Portsmouth in the classified service thereof, and for any workman engaged in any public work carried on or aided by the municipality whether done by contract or otherwise. Provision shall be made by ordinance for the enforcement of this section.''

This case was tried on an agreed statement of facts and for clarity we set forth two paragraphs of the stipulation which are pertinent.

''4. That for a long period of time at the time of the filing of this action and now, the plaintiffs and other employees of the fire department of said city of Portsmouth similarly situated, have been assigned by the administrative executives of said city and required to be on duty as such employees seventy-two (72) hours per week under what is commonly known as the two-platoon system, which in effect requires said employees to report for work and be at their posts of duty as such employees 24 hours and then be off duty 24 hours, with one 24-hour period allowed them as a day off every 14 days, such one 24-hour period being an extra day off every 14 days.''

"7. It is further agreed that there is no ordinance of the city of Portsmouth specifically prescribing the work day or hours of employment of the plaintiffs, but that the assignment of their work days and hours of work as mentioned aforesaid has been made by the defendants as an administrative practice by them in their official capacities."

The sole question in issue in this appeal is whether Section 17-1a, General Code, or Section 164 of the city charter controls the working hours of the fire department of the city of Portsmouth.

It will be noted that the last sentence of Section 17-1a, General Code, *supra*, provides that the off-duty periods therein set out shall not apply to any city that may adopt the eight hour regulation for its fire department. Plaintiffs claim that Section 164, *supra*, of the charter is such an adoption, is self-executing and therefore governs. The defendants contend that this section of the charter is not self-executing and that since no legislation has been provided thereunder by the council of the city of Portsmouth, Section 17-1a, General Code, controls.

While counsel for both parties have ably briefed the law not only of Ohio but other jurisdictions as well, we need look no further than the Supreme Court of Ohio for the correct solution of the question presented.

Section 164 of the charter, *supra*, stems directly from and is almost in the same phraseology as Section 37, Article II of the Constitution, save and except the city charter includes the words "for the city employee of the city of Portsmouth in the classified service thereof."

The Supreme Court of Ohio in the case of *Stange* v. *City of Cleveland,* 94 Ohio St., 377, 380, 114 N. E., 261, held that Section 37, Article II, *supra*, is not self-executing, saying:

"This provision was not self-executing within the definition that a self-executing provision is one which supplies the rule or means by which the right given may be enforced or protected or by which a duty enjoined may be performed."

The holding in the *Stange case* is a direct and definite negative answer to plaintiffs' contention that Section 164 of the charter under consideration is self-executing.

The Supreme Court has also held in *Haas* v. *Jennings,* 120 Ohio St., 370, 166 N. E., 357, that a provision in a city charter that does not carry with it the mode or manner of enforcement is not self-executing.

Until such time as the city of Portsmouth provides by proper legislation under the exception in the last sentence of Section 17-1*a*, General Code, the eight-hour regulation for its fire department, that department is controlled by the state statutes. Under such circumstances the case of *State, ex rel. Strain, Dir. of Dept. of Indus. Relations,* v. *Houston, Chief of Fire Dept. of City of Cincinnati,* 138 Ohio St., 203, 34 N. E. (2d), 219, is dispositive of this appeal. The Supreme Court there holds that Section 17-1*a* is valid and does not violate the principle of local self-government in municipalities of this state.

The city of Portsmouth, having been granted and having accepted the privileges of charter or home-rule government under the Constitution, is not exempt nor has it immunity from legislative control relating to employment of firemen in the fire department simply by setting forth in its charter that "not to exceed eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work, for any city employe of the city * * * in the classified service thereof." If Section 164 of the charter so exempts the city from the statutory regulation provided by the Legis-

lature for the regulation of fire departments, then violence is done to those safeguards that have been thrown around the employment of city firemen. The Legislature of Ohio recognized that something more was necessary to protect firemen and the fire department than the mere pronouncement of the maximum hours of employment, otherwise Section 17-1, General Code, which provides the number of hours constituting a day's work or week's work would not have specifically excepted firemen. Not only did the Legislature except firemen but enacted the following section, Section 17-1a, General Code, specifically providing for the maximum consecutive hours for firemen on duty as well as off-duty periods, and leaves of absence.

The very nature and purpose of a city fire department are too important not only to the firemen employed but the public generally to be lightly treated. The section of the charter under consideration recognizes this when it is provided therein that provision shall be made by ordinance for the enforcement of the eight-hour day and forty-eight hour week. Considering the function of a fire department as it affects life and property, not only of the citizens of Portsmouth but of the public generally, it is a serious question whether Section 164 of the city charter even applies to the fire department when it refers to the classified service. Certainly the plaintiffs in this case should hesitate to acquiesce in nullifying the protective legislation afforded by the state. Standing alone, this section of the charter is in direct conflict with the general law provided by the state. As declared in the *Houston case, supra,* at page 212, "The protection of life and property from the hazards of fire, conserves the private as well as the public resources of the country and consequently is a matter of public welfare and concern.

"Likewise, adequate fire protection calls for the

employment of great numbers of men who are obliged to live under modes of life and conditions of employment which take them away from their homes for longer intervals of time than most employments, and which expose them to unusual dangers of life and limb. Likewise, the health of such employees is constantly placed in jeopardy by the incidents of their employment. These are considerations which call for the exercise of the police power in the interest of the public and the state. The Legislature is given large discretion in determining the measures which are necessary or appropriate to secure the public welfare.''

Because of the applicability of the *Houston case* to the situation that confronts us, we take the liberty of setting forth the comment of the court on the various provisions of the Ohio Constitution affecting the hours of employment and the conditions under which fire men of cities shall work together with the power granted and reserved to cities to enact such regulations as well as those reserved to the state. The court in the *Houston case, supra,* said at page 209:

''Section 1 of Article II of the Constitution provides that the legislative power of the state shall be vested in a General Assembly consisting of a Senate and House of Representatives; and that except where authorized under the initiative and referendum, all legislative authority of the state must be exercised alone by the General Assembly.

''Authority exists in the Legislature to diminish, regulate or resume the powers it has conferred on all municipal corporations, unless interdicted by the Constitution. This necessarily results from the fact that under the Constitution all legislative power of the people is granted to the Legislature subject to the initiative and referendum, unless such legislative pow-

er is expressly or by clear implication granted to municipalities or other governmental subdivisions as arms of state government. *People* v. *Pinckey, 32 N. Y.,* 377. The constitutional grants of power to municipalities in this state are contained in Sections 3 and 7 of Article XVIII of the Constitution which are as follows:

" 'Sec. 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.'

" 'Sec. 7. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government.'

"In this connection, attention must be given to the broad powers reserved under the Constitution to the Legislature of the state by Sections 34 and 37 of Article II, which are as follows:

" 'Sec. 34. Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power.'

" 'Sec. 37. Except in cases of extraordinary emergency, not to exceed eight hours shall constitute a day's work, and not to exceed forty-eight hours a week's work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract, or otherwise.'

"Thus, power is granted to municipal corporations to legislate in the interest of public peace and the protection of persons and property within their territorial limits, but such legislation must not conflict with

state legislation on the same subject, and there is reserved to the Legislature power to direct the manner and method by which municipal corporations shall effectively carry out their functions having to do with the preservation of the peace and the protection of persons and property. *Niehaus, Bldg. Inspector,* v. *State, ex rel. Board of Education of City of Dayton,* 111 Ohio St., 47, 52, 53, 144 N. E., 433; *State, ex rel. Ramey,* v. *Davis et al., County Commrs.,* 119 Ohio St., 596, 599, 165 N. E., 298. As was said * * * in the case of *Schneiderman* v. *Sesanstein,* 121 Ohio St., 80, 82, 167 N. E., 158, 64 A. L. R., 981, 'The police power thus conferred by the Constitution cannot be denied municipalities by statute, but that power is restricted, in that such "local police, sanitary and other similar regulations" must not be "in conflict with general laws." Thus the legislative branch of the state government enacts laws to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state, and these are the general laws referred to. They apply to all parts of the state alike. Municipalities may adopt and enforce local regulations covering the same subject so long and so far as the same are not in conflict with general laws.' See, also, *City of Fremont* v. *Keating,* 96 Ohio St., 468, 118 N. E., 114.

"On the other hand, matters which have to do with city management, the distribution of official function and responsibility, the improvement of the territory comprised within the limits of the corporation and its adaptation to the purposes of residence and business, are within the peculiar jurisdiction and control of local municipal government. 28 Ohio Jurisprudence, 228, Section 120.

"Section 17-1a, General Code, the validity of which is here drawn in question, regulates the hours of em-

ployment and the conditions under which firemen of cities shall work. The question before the court must necessarily be whether this is a matter of general public concern having implications which transcend municipal boundaries.''

In holding that the question presented is a matter of general public concern transcending municipal boundaries, the Supreme Court in the *Houston case, supra,* points out the policy of the state of Ohio relating to fire protection and to the welfare of firemen, as expressed both in state legislation and in court decisions, that the state, through legislative enactment, has established a state-wide fire protective policy in providing an exhaustive state building code to protect against fire hazards, and a department of workshops and factories to inspect buildings and eliminate fire hazards by ordering alterations and preventing the use of buildings until compliance with lawful orders; and that the state also has established a tenure subject to removal for cause for the members of the fire departments of villages and a civil service status for firemen in cities together with a state-wide system of firemen's pensions, all of which are considered matters of state-wide concern subject to state legislation. See *Thompson* v. *City of Marion,* 134 Ohio St., 122, 16 N. E. (2d), 208.

In the instant case it should readily be seen that the welfare of the firemen of the city of Portsmouth together with the fire protection afforded by the fire department transcends the narrow limitations of the phraseology of Section 164 of the city charter.

To hold otherwise would deprive both the firemen and the city of the protective legislation afforded by the state. To find that it was the intent of the city to enact, under Section 164 of its charter, not only the ''hours of work'' but the working conditions and the

protective legislation referred to as well, the court in the instant case must legislate and that the court cannot do. The framers of the charter recognized this principle when it was specifically stated that "provision shall be made by ordinance for the enforcement of this section."

For the reasons hereinbefore given and more especially those set forth in the *Houston case, supra,* the injunction heretofore entered by the trial court must be dissolved, its judgment reversed and judgment entered for the defendants.

*Judgment reversed and judgment for defendants.*

McCurdy, P. J., and Gillen, J., concur.