Jack **ALKIRE** et al., Plaintiffs,

v.

Dr. John W. **CASHMAN** et al.,
Defendants.

Civ. No. 72–285.

United States District Court,
S. D. Ohio, E. D.

Oct. 11, 1972.

Lyman Brownfield, Laurence E. Sturtz, Columbus, Ohio, for plaintiffs.

James J. Hughes, Jr., City Atty., Robert A. Bell, William J. Brown, Atty. Gen. of Ohio, Michael Grove, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on plaintiffs' application for a temporary restraining order and on defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. See Rules 65(b) and 12(b)(1), (6), Fed.R.Civ.P.

In their complaint herein, in which jurisdiction is predicated upon 28 U.S.C. § 1331, the plaintiffs' have challenged the constitutionality of Section 6111.13 O.R. C. (hereinafter the Act) and have re-

quested the convening of a three-judge court, pursuant to 28 U.S.C. §§ 2281 et seq. for the purpose of declaring that provision void. The statute in question requires that all public waterworks systems in Ohio serving more than 20,000 persons, fluoridate their water supplies to a specified range of fluoride content, by January 1, 1971; and that systems serving between 5,000–20,000 persons perform this duty by January 1, 1972. Systems serving fewer than 5,000 persons are not required to fluoridate their water under the Act. The Columbus Municipal Waterworks (hereinafter the City) supplies more than 20,000 persons, including persons living in incorporated communities beyond the corporate limits of the city. It appears that the city has not yet complied with the state statute but intends to fluoridate its water supplies by November, 1972, pursuant to authorization conferred upon it by Columbus City Ordinances Nos. 1739–71 and 1162–72 (hereinafter the ordinances).

Some confusion is present in the pleadings as to the city's motivation in fluoridating its water supplies. The plaintiffs assert that the municipal ordinances referred to above will merely implement the requirements imposed upon the city by the Act. They argue from this premise that what is really at issue at bar is a statute of statewide application which mandates fluoridation of municipal water systems and that this statute contains certain alleged constitutional infirmities. These statutory infirmities include alleged violations of plaintiffs' rights of privacy, due process and equal protection as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States; and of the rights of their respective communities to home rule, as provided for in Article XVIII, Section 7, of the Ohio Constitution. Plaintiffs further argue that the enactment of Section 6111.13 impaired the contractual obligations owing from the city to certain surrounding communities in Franklin County, Ohio, in violation of Article I, Section 10, of the United States Constitution.

The defendants dispute plaintiffs' contentions that the city adopted the ordinances by way of implementing the Act. They note, in support of this position, that the city is out of time under the deadlines imposed by the statute; that the State has taken no steps to force compliance by the city; and further that the ordinances make no reference to the duties, if any, that are imposed by the state. Under this theory, the city argues that it has the right under federal and state law, and under the doctrine of home rule, to fluoridate its water supplies. The Court will consider the disparate contentions of this matter alternatively under both the plaintiffs' and defendants' theories of the case, beginning with the latter.

█ If we assume that the ordinances were adopted pursuant to the general police powers of cities incorporated under the laws of Ohio, and in conformity with rules governing their respective political processes, then it is settled in this state that the fluoridation of a municipal water supply is a proper exercise of municipal police powers which does not violate either federal or state constitutional rights. See Kraus v. City of Cleveland, 163 Ohio St. 559, 127 N.E.2d 609, 57 Ohio O. 1 (1955), appeal dismissed for want of a substantial federal question, 351 U.S. 935, 76 S.Ct. 833, 100 L.Ed. 1463 (1956).

█ If, on the other hand, we were to accept plaintiffs' theory of the case, we are still of the opinion that the petition fails to raise a justiciable issue. Courts, both state and federal, have held with virtual unanimity that the fluoridation of public water systems does not violate the due process clause or constitutional rights incorporated by that clause of the Fourteenth Amendment to the United States Constitution. See Kraus v. City of Cleveland, *supra,* appeal dismissed for want of a substantial federal question, 351 U.S. 935, 76 S.Ct. 833, 100 L.Ed. 1463 (1956); Crawford v. City of De-

troit, 389 F.2d 1001 (C.A.6, 1968); Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142 (1956), appeal dismissed for want of a substantial federal question, 348 U.S. 892, 75 S.Ct. 216, 99 L.Ed. 701 (1954); Readey v. St. Louis County Water Co., 352 S.W.2d 622 (Mo. 1961), appeal dismissed and cert. denied, 371 U.S. 8, 83 S.Ct. 20, 9 L.Ed.2d 47 (1962); Dowell v. City of Tulsa, 273 P. 2d 859 (Okl.1954), cert. denied, 348 U. S. 912, 75 S.Ct. 292, 99 L.Ed. 715 (1955); also see, Opinion of Justices, 243 A.2d 716 (Del.1968); Schuringa v. Chicago, 30 Ill.2d 504, 198 N.E.2d 326 (1966); Miller v. Evansville, 247 Ind. 563, 219 N.E.2d 900 (1966); Baer v. Bend, 206 Or. 221, 292 P.2d 134 (1956); Birnel v. Fircrest, 53 Wash.2d 830, 335 P.2d 819 (1959). In addition, the Supreme Court of Ohio has held, with specific reference to Section 6111.13, that the writ of prohibition will not lie against the mayor of a city who acts to fluoridate a municipal water supply pursuant to the command of that statute. See State ex rel. Lehmann v. Cmich, 23 Ohio St.2d 11, 52 Ohio O.2d 32, 260 N. E.2d 835 (1970).

Plaintiffs present two additional questions which, to our knowledge, have not been raised in their precise terms in other actions similar to the present suit. Plaintiffs' first contention, that the act violates the Equal Protection Clause of the Fourteenth Amendment, requires little discussion. As noted earlier, Ohio with reference to the act in question, has chosen to classify differently public water systems serving fewer than five thousand persons from those serving more than that number of users. Plaintiffs contend that this legislation distinguishes unfairly between large and small water suppliers, is violative of Article II, Section 26, of the Ohio Constitution which requires that state laws of a general nature have a "uniform operation throughout the state", and further violates the federal Equal Protection Clause.

■ Considering first plaintiffs' state law contention, the Court notes that Article XVIII, Section 1, of the Ohio Constitution specifically classifies municipal corporations into villages, having fewer than 5,000 persons, and cities having 5,000 or more inhabitants. The statutory classification in this case is in conformity with and analogous to this constitutional provision, and in our view does not result in a non-uniform effect within the meaning of Ohio law. See Bucyrus v. State Dep't. of Health, 120 Ohio St. 426, 166 N.E. 370 (1929); State ex rel. Ramey v. Davis, 119 Ohio St. 596, 165 N.E. 298 (1929); State ex rel. Heffernan v. Serp, 125 Ohio St. 87, 180 N.E. 650 (1932).

■ Nor do we think that a substantial question is raised under the Equal Protection Clause to the Fourteenth Amendment. The Equal Protection Clause does not prohibit a state from drawing distinctions between groups and legislating differently for the various groups so designated. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed. 2d 577 (1966); Williams v. San Francisco Unified School District, 340 F. Supp. 438 (N.D.Cal.1972). However, "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Heath v. Westerville Board of Education, 345 F.Supp. 501 (S.D.Ohio E.D. 1972).

■ In light of the provision of the Ohio Constitution cited above, which differentiates, as a matter of state constitutional law between villages and cities, and on its face, we do not believe that the act creates arbitrary classifications within the meaning of the Equal Protection Clause. The Ohio General Assembly, at least arguably, created this

classification so as to reach an optimum number of citizens, at the least possible cost, utilizing the greatest efficiencies of scale. The fact that the legislature chose, at this time, not to include within the reach of the act public water systems serving less than 5,000 users does not invalidate the act as a whole. There is no federal constitutional requirement that a state exercise its police powers, to the fullest extent, at any given time; nor that a state law, from the point of view of equal protection necessity, have a uniform application. Because the statutory classification is parallel to the state constitutional provision and does not affect "preferred" constitutional guarantees, we do not think the State need justify the enactment under the heavier burden of "compelling state interest." See Shapiro v. Thompson, *supra*. For these reasons plaintiffs' foregoing contentions under the Equal Protection Clause are without merit.

Finally, plaintiffs argue that the act in question infringes on the contractual rights of their respective communities, under the Obligation of Contracts Clause of the Federal Constitution. See Article I, Section 10, supra. This argument maintains first that the City of Columbus has a monopoly on the available water resources in regional water basins, and second, that at the time these Franklin County municipalities entered water supply contracts with the City of Columbus, its water did not contain a fluoride content. Plaintiffs therefore allege that the act, to the extent that it alters the second of these conditions without modifying their rights due to the first, violates their Article I, Section 10, rights.

 We have several problems with this argument. As a threshold matter, the Court entertains substantial doubt as to whether the plaintiffs in this action have standing to raise this contention. While it is true as a general matter that the formal requirements of standing have been substantially relaxed as to *federal* taxpayers, see and compare Flast v. Cohen, 392 U.S. 83, 88 S.Ct.

1942, 20 L.Ed.2d 947 (1968) with Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); but see also Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), we are not at all persuaded that such relaxation inures to the benefit of plaintiffs. First, plaintiffs did not make nor were they direct parties to the contracts in question; rather, the various municipalities in which these plaintiffs live were parties to the contracts which are alleged to be infringed. Since this issue is one arising under contract, plaintiffs' relation to such contracts must be decided according to governing principles of Ohio law. See, Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Ohio law, plaintiffs stand, at best, as third party beneficiaries to the contracts between Columbus and their respective municipalities. But according to the law of the state, only creditor and donee beneficiaries can directly assert rights based upon a contract between two other parties. In the Court's view, plaintiffs at bar more resemble incidental beneficiaries under the contract in question than they do donee beneficiaries; compare Blunk v. Dennison Water Supply Co., 71 Ohio St. 250, 73 N.E. 210 (1905) with Visintine & Co. v. New York, C. &˙ St. L. R. Co., 169 Ohio St. 505, 160 N.E.2d 311, 9 Ohio O. 2d 4 (1959), and accordingly cannot assert a private cause of action based upon a contract between two public agencies.

But even assuming *arguendo* that plaintiffs have standing to raise this claim, it is the Court's belief that political checks, contained within the act itself, were available to prevent impairment of contract, had plaintiffs asserted their rights in a timely fashion.

Under the express terms of the statute, any citizen of those communities served by a public water system affected by the act, could have filed, within one hundred twenty (120) days of the effective date of the act, a referendum petition pursuant to Section 3501.38 O.R.C. Had such a petition obtained the requisite number of signatures, as required

under Ohio law, the issue of whether that public water system would have to fluoridate its water would have been determined by a majority referendum vote. Under the statute a community which found fluoridation undesirable, and which filed a petition within one hundred twenty days of the effective date of the act, could have removed itself from the ambit of the act's coverage. This political check was not employed by plaintiffs and members of their class, or by their respective communities.

 Ordinarily constitutional rights are not subject to popular vote. The Ohio General Assembly could not, for example, delegate to the citizens of this state the option of abrogating, by binding referendum vote, the established First Amendment rights of an unpopular minority. See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Lucas v. Forty-Fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). However, here, where as we have noted earlier, no established federal constitutional rights are at issue, the General Assembly acted well within its constitutionally permissible scope in referring this surprisingly controversial issue to the political processes and by granting local communities an option of deciding fluoridation by referendum. Plaintiffs, having been granted the opportunity to avoid the impact of the statute, and having failed to avail themselves of that opportunity, cannot now be heard to argue that the act infringes upon their contractual rights. Where no clear threat to constitutional rights is presented, courts should be reluctant to reverse the wishes of the people or their representatives, especially when effective political checks exist to gauge the popular will. See Reitman v. Mulkey, *supra*, 387 U.S. at 395–396, 87 S.Ct. 1627 (Harlan, J., dissenting); Lucas v. Forty-Fourth General Assembly, *supra*, 377 U.S. at 748–751, 754–759, 84 S.Ct. 1459 (Stewart, J., dissenting).

 We note, merely in passing, that contracts must be interpreted in light of evolving conceptions of public policy. A private contract for the sale of slaves, entered into several days before the adoption of the Thirteenth Amendment, or one for the delivery of alcoholic spirits, signed just before the ratification of the Eighteenth Amendment, would be interpreted as nullities in reference to subsequently decided but nonetheless overarching public policy goals. In situations similar to the hypotheticals posed above, courts have not perceived any violation of the obligation of contracts clause of the Constitution. See, City of El Paso v. Simmons, 379 U.S. 497, 506–510, 85 S.Ct. 577, 13 L.Ed.2d 446 (1964); Home Building and Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1933); Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932); Ogden v. Saunders, 12 Wheat. 213, 291, 6 L.Ed. 606 (1827).

 We further note that no allegation has been made that the city herein specifically contracted *not* to inject fluoride to the other chemical substances which are now added, quite routinely, to the city's water supplies. In the absence of such a contractual provision, and for all of the other reasons stated above, we hold that plaintiffs' contractual rights, to the extent that plaintiffs have rights under these contracts, were not infringed by the act.

Accordingly, we hold that no substantial federal constitutional question is presented and the convocation of a three-judge court is not mandated. See, In re Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Board of Regents of the University of Texas System v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). We further hold that temporary injunctive relief is inappropriate and that the Court is without subject matter jurisdiction over the action.

The views expressed in this Opinion shall supercede our oral opinion, rendered from the bench on September 29, 1972, granting defendants' motions to dismiss. In conformity with the written Order filed by the Court on October 5, 1972, and for the reasons set forth above, this action is hereby dismissed.

It is so ordered.