**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Newburgh Hts. v. State*, **Slip Opinion No. 2022-Ohio-1642.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1642

THE VILLAGE OF NEWBURGH HEIGHTS, ET AL., APPELLEES, *v.* THE STATE OF OHIO, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Newburgh Hts. v. State*, Slip Opinion No. 2022-Ohio-1642.]**

*Home rule—Ohio Constitution, Article XVIII, Section 3—R.C. 5747.502—No conflict exists between a municipality's ordinance allowing the use of traffic cameras and state law allowing a reduction of a municipality's share of the state's local-government funds—R.C. 4511.099—No conflict exists between a municipality's ordinance allowing the use of traffic cameras and state law requiring a municipality to pay an advance deposit to cover court costs and fees when litigating a citation for a violation based on the use of traffic cameras—State laws do not intersect with a municipality's exercise of home-rule authority to enforce its ordinances through the use of traffic cameras.*

(No. 2021-0247—Submitted February 9, 2022—Decided May 19, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 109106 and 109114, 2021-Ohio-61.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from a judgment of the Eighth District Court of Appeals, we are asked to decide whether the Ohio Constitution's Home Rule Amendment, Article XVIII, Section 3, prohibits the General Assembly from enacting statutes that (1) reduce a municipality's share of the state's local-government fund by an amount equal to the fines collected based on citations arising from the use of traffic cameras and (2) require a municipality to pay an advance deposit of costs and fees when commencing a civil action to enforce a citation issued using an automated traffic-camera system.

{¶ 2} Effective July 3, 2019, R.C. 5747.502(B) requires municipalities to report to the tax commissioner by July 31 of each year the gross amount of fines collected from the use of traffic cameras during the preceding fiscal year. The tax commissioner then uses that information to reduce the municipality's share of local-government funds by the amount of the fines collected and reallocates the amount of the reduction to the transportation district in which the municipality is situated. R.C. 5747.502(A)(6) and (C). The parties call this reallocation of local-government funds the "spending setoff."

{¶ 3} Municipal and county courts have exclusive jurisdiction over all civil actions concerning traffic-law violations, including citations issued using traffic cameras. R.C. 1901.18(A)(14), 1907.02(C), and 1901.20(A)(1). And relevant here, R.C. 4511.099(A) requires municipalities filing a civil action to enforce citations issued using traffic cameras to pay an advance deposit to the court in which the citation is filed to cover the costs and fees of the action, unless the citation is for a violation that occurred in a school zone. The parties refer to this as the "deposit requirement."

**{¶ 4}** Appellees, the village of Newburgh Heights and the city of East Cleveland, each operate programs to enforce their traffic laws with cameras. Newburgh Heights filed this action for a declaratory judgment and for injunctive relief, arguing that the spending setoff and the deposit requirement infringe on its municipal-home-rule powers in violation of Article XVIII, Section 3 of the Ohio Constitution. East Cleveland intervened as a plaintiff. The trial court denied their requests for a preliminary injunction, but the court of appeals reversed, holding that the spending setoff and the deposit requirement unconstitutionally penalize municipalities for exercising their home-rule authority to enforce their traffic laws with cameras.

**{¶ 5}** In framing the Ohio Constitution, the people of this state conferred the spending power on the General Assembly. And with limited exceptions not relevant here, the Ohio Constitution does not require the General Assembly to appropriate any funds to municipalities, and it does not create a specific right for a municipality to receive local-government funds from the state. The General Assembly therefore has exclusive discretion to reduce the appropriation of local-government funds to a municipality in the amount that the municipality has collected in fines from citations issued based on the operation of traffic cameras.

**{¶ 6}** The municipalities' argument that the deposit requirement violates the Home Rule Amendment fares no better. Article IV, Sections 1 and 15 grant the General Assembly the authority to establish statutory courts and to provide for their maintenance. R.C. 4511.099 falls within this exclusive grant of power, because it merely requires that municipalities that ask state courts to enforce citations issued using traffic cameras shoulder the costs that their litigation creates. We have long recognized that " '[t]he subject of costs is one entirely of statutory allowance and control.' " *Cave v. Conrad*, 94 Ohio St.3d 299, 302, 762 N.E.2d 991 (2002), quoting *State ex rel. Michaels v. Morse*, 165 Ohio St. 599, 607, 138 N.E.2d 660 (1956).

**{¶ 7}** Neither the spending setoff nor the deposit requirement is unconstitutional. These statutes do not invade that power of local self-government that the people of Ohio conferred on municipalities in adopting the Home Rule Amendment. Rather, these provisions may be given effect without one negating or encroaching upon the others.

**{¶ 8}** Therefore, we reverse the judgment of the Eighth District Court of Appeals, and we remand this matter to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

**{¶ 9}** Newburgh Heights and East Cleveland each have enacted ordinances to enforce certain of their traffic laws with cameras. *See generally* Newburgh Heights Codified Ordinances Chapter 315; East Cleveland Municipal Code Section 313.011.

**{¶ 10}** R.C. 5747.502(B)(1) requires municipalities like Newburgh Heights and East Cleveland that use "traffic law photo-monitoring devices," R.C. 4511.092, to file annual reports with the tax commissioner disclosing the amount of fines collected during the preceding year from the use of traffic cameras. R.C. 5747.502(C) then reduces the amount that the municipality would otherwise receive from the local-government fund by the amount of the fines that the municipality collected from enforcing citations issued using traffic cameras. Those funds are then reallocated to the transportation district of which the municipality is part. R.C. 5747.502(F).

**{¶ 11}** The General Assembly has granted municipal and county courts exclusive jurisdiction over any action concerning the violation of a municipal traffic ordinance. R.C. 1901.18(A)(14), 1907.02(C), and 1901.20(A)(1). In addition, it enacted the deposit requirement, providing that municipalities bringing civil actions to litigate citations arising from the use of traffic cameras must pay an advance

deposit covering the costs and fees of the action unless the violation occurred in a school zone. R.C. 4511.099.

{¶ 12} Newburgh Heights brought this lawsuit seeking a declaratory judgment and preliminary injunctive relief, alleging that the spending setoff, the grant of exclusive jurisdiction over traffic-camera cases to municipal and county courts, and the deposit requirement violate its home-rule authority. It claimed that the loss of local-government funds from its budget would compel the village to abandon its use of traffic cameras to the detriment of public safety.

{¶ 13} East Cleveland intervened and similarly alleged that the spending setoff, the grant of exclusive jurisdiction, and the deposit requirement violate the Home Rule Amendment.

{¶ 14} The municipalities moved for a preliminary injunction, and the trial court granted it in part and denied it in part. The court enjoined a statute not at issue here requiring a police officer to be present when traffic cameras are in use. However, it denied an injunction against the spending setoff, the grant of exclusive jurisdiction to municipal and county courts over actions litigating citations based on the use of traffic cameras, and the deposit requirement.

{¶ 15} The municipalities appealed. The Eighth District Court of Appeals denied the state's motion to dismiss for lack of a final, appealable order, and it affirmed the trial court's judgment in part and reversed in part. It upheld the trial court's decision to deny a preliminary injunction against the exclusive-jurisdiction provision. However, it reversed the trial court's denial of a preliminary injunction against the spending setoff and the deposit requirement. It held that both provisions constitute unconstitutional attempts to limit the legislative home-rule powers of municipalities.

{¶ 16} We accepted the state's appeal to review two propositions of law:

SUPREME COURT OF OHIO

1. Because the General Assembly's discretionary spending power can be limited only by an express constitutional limit on the spending itself, not by objections to goals indirectly achieved by the spending, the Spending Setoff does not violate a city's home-rule power.

2. None of the Traffic Camera Law's provisions at issue, including the Spending Setoff and the Deposit Requirement, violate the Ohio Constitution's Home Rule Amendment.

*See* 162 Ohio St.3d 1437, 2021-Ohio-1399, 166 N.E.3d 1256.

## II. LAW AND ANALYSIS

### *A. Constitutional Interpretation*

**{¶ 17}** "The purpose of our written Constitution is to define and limit the powers of government and secure the rights of the people." *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 16 (lead opinion). The Ohio Constitution's language controls as written unless it is changed by the people themselves through the amendment procedures established by Article XVI. The Ohio Constitution is the paramount law of this state, and we recognize that its framers chose its language carefully and deliberately, employed words in their natural sense, and intended what the words said, *see Gibbons v. Ogden*, 22 U.S. 1, 188, 6 L.Ed. 23 (1824); *see also Lawnwood Med. Ctr., Inc. v. Seeger*, 990 So.2d 503, 510 (Fla.2008). Therefore, in construing the Ohio Constitution, our duty is to determine and give effect to the meaning expressed in its plain language. *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 50. In doing that, we give undefined words in the Constitution their usual, normal, or customary meaning. *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 146 Ohio St.3d 356, 2016-Ohio-2806, 56 N.E.3d 950, ¶ 16.

**{¶ 18}** "We review constitutional challenges to state and local legislation de

novo * * *." *Put-in-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, 167 N.E.3d 922, ¶ 11.

### *B. The Spending Power*

{¶ 19} Article II, Section 1 of the Ohio Constitution confers all legislative power of the state on the General Assembly. "The General Assembly has *plenary power* to enact legislation * * *" (emphasis added), *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 10, and therefore it may "enact *any law* that does not conflict with the Ohio or United States Constitution" (emphasis added), *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 60. For this reason, " 'before any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision.' " *Boyce* at ¶ 10, quoting *Williams v. Scudder*, 102 Ohio St. 305, 307, 131 N.E. 481 (1921).

{¶ 20} Included in the legislative power is the spending power. As we recognized in *State v. Medbery*, 7 Ohio St. 522, 528 (1857), "[t]he sole power of making appropriations of the public revenue is vested in the general assembly." Article II, Section 22 of the Ohio Constitution, however, imposes an express limit on the power of the General Assembly to appropriate state funds: "No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years." *See generally State ex rel. Youngstown v. Jones*, 136 Ohio St. 130, 133, 24 N.E.2d 442 (1939). Spending laws of a general nature must also be uniform, Article II, Section 26, and not retroactive, *id.*, Section 28. And Article II, Section 29 prohibits the payment of extra compensation for services already rendered to the state, while Section 31 bars the General Assembly from changing the compensation of its members during their term in office.

{¶ 21} There are also provisions in the Ohio Constitution that require the General Assembly to make certain appropriations to political subdivisions, among other entities. One is Article XII, Section 9, which states, "Not less than fifty per cent of the income, estate, and inheritance taxes that may be collected by the state shall be returned to the county, school district, city, village, or township in which said income, estate, or inheritance tax originates, or to any of the same, as may be provided by law." A second appears in Article XV, Section 6(C)(3), which requires the General Assembly to appropriate specific percentages of the casino tax to counties, school districts, and municipalities, among others. *See also, e.g.*, Article VII, Section 1 ("Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state * * *").

{¶ 22} But beyond such specific provisions stating that revenue from certain taxes must be redistributed to municipalities, the Ohio Constitution does not create a general duty for the legislature to fund the operations of municipal corporations.

### C. The Home Rule Amendment

{¶ 23} Prior to the adoption of the Home Rule Amendment in 1913, the power of taxation could not "be exercised by a municipal corporation without a further unequivocal delegation by the legislative body." *Mays v. Cincinnati*, 1 Ohio St. 268, 273 (1853). "Therefore municipalities of the state, especially the larger ones, were continually at the door of Ohio's General Assembly asking for additional political power for municipalities, or modifications in some form of previous delegations of such power." *Perrysburg v. Ridgway*, 108 Ohio St. 245, 255, 140 N.E. 595 (1923). "Such power, being legislative only, could be withdrawn from the municipalities, or amended, at any session of the Legislature." *Id.*

{¶ 24} "[T]he intention of the Home Rule Amendment was to eliminate statutory control over municipalities by the General Assembly." *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998). It "provided

municipalities with 'full and complete political power in all matters of local self government.' " *Id.*, quoting *Perrysburg* at 255. The power to tax is included in the "general, broad grant of power that municipalities enjoy under Article XVIII," *id.*, "for without this power local government in cities could not exist for a day," *State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919).

**{¶ 25}** The Home Rule Amendment therefore secures municipal sovereignty over matters of local government by granting municipalities the power to levy taxes and raise revenue through other sources, such as fines imposed using traffic cameras. By permitting municipal government to be financially self-sustaining, Article XVIII ensures that municipalities are no longer "at the door of Ohio's General Assembly," dependent on appropriations from the legislature for their existence.

**{¶ 26}** East Cleveland and Newburgh Heights, however, contend that the Home Rule Amendment prohibits the General Assembly from using the spending power to "punish" municipalities for exercising their "right" to local self-government. But they rely on cases holding that *individuals*—especially criminal defendants—cannot be penalized for asserting constitutional rights.

**{¶ 27}** Reliance on those cases is misplaced. A municipal corporation acts in the capacity of the government in exercising the police power, not as "person" guaranteed constitutional protections from government. *See Ysursa v. Pocatello Edn. Assn.,* 555 U.S. 353, 363, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009) (the federal Constitution does not create any privileges or immunities enforceable against a state by its political subdivisions); *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 31 (municipal corporation exercising government function is not a "person" for purposes of Marsy's Law, Article I, Section 10a, Ohio Constitution); *E. Liverpool v. Columbiana Cty. Budget Comm*., 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶ 20 (municipal corporations are not entitled to due process or equal protection against the state).

**{¶ 28}** State and municipal governments "derive their authority from the same organic instrument—the Ohio Constitution." *State v. Best*, 42 Ohio St.2d 530, 330 N.E.2d 421 (1975), paragraph one of the syllabus. And the Ohio Constitution, Article XVIII, Section 3 delineates municipalities' powers: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws*." (Emphasis added.)

### D. *Is There a Conflict Between State and Local Law?*

**{¶ 29}** "The test for determining whether state and local laws conflict is ' "whether the ordinance permits or licenses that which the statute forbids * * *, and vice versa." ' " (Ellipsis added in *Ohioans for Concealed Carry*.) *State ex rel. Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 21, quoting *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 26, quoting *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), paragraph two of the syllabus. That determination is dispositive of the issues presented in this case.

### 1. The Spending Setoff

**{¶ 30}** The spending setoff reduces the amount that the municipality would otherwise receive from the local-government fund by the amount of traffic-camera fines that the municipality collected. It does not conflict with municipal-home-rule authority, because it does not *prohibit* municipalities from enforcing their traffic laws with cameras. The spending setoff may disincentivize municipalities from adopting or continuing to use traffic cameras, but it does not forbid what municipal law permits any more than the creation of a financial incentive to adopt the use of traffic cameras would require a municipality to do what its own laws proscribe. The setoff provision does not restrict municipalities from enacting or enforcing local laws, nor does it preempt or invalidate those laws. Therefore, there is no

conflict between the spending setoff and the municipalities' ordinances adopting the use of cameras to enforce traffic laws.

### 2. The Deposit Requirement

{¶ 31} The deposit requirement makes municipalities pay an advance deposit covering court costs and fees when litigating a citation for a traffic violation based on the use of a camera if the violation did not occur in a school zone. R.C. 4511.099.

{¶ 32} Article IV, Sections 1 and 15 of the Ohio Constitution grant the General Assembly the authority to create statutory courts, and we have recognized that "[n]one of the various provisions of article XVIII of the Constitution of Ohio [the Home Rule Amendment] are effective to abridge the sovereignty of the state over municipalities in respect to its courts." *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 165 N.E. 298 (1929), paragraph two of the syllabus; *accord Behrle v. Beam*, 6 Ohio St.3d 41, 42, 451 N.E.2d 237 (1983).

{¶ 33} The General Assembly has granted municipal and county courts exclusive jurisdiction over civil actions for violations of a state traffic law or municipal traffic ordinance, R.C. 1901.18(A)(14), 1907.02(C), and 1901.20(A)(1), and the deposit requirement ensures that municipalities, like other private litigants, will shoulder the burden that their litigation creates. "The power to create a court necessarily includes the power to define its jurisdiction and to provide for its maintenance." *Ramey* at 599. The deposit requirement may make litigating violations based on traffic cameras more expensive for municipalities. Nonetheless, the deposit requirement does not conflict with local law, because it does not *prohibit* municipalities from using cameras to enforce their traffic laws.

{¶ 34} Therefore, the deposit requirement does not limit or otherwise infringe upon any municipal authority granted by the Home Rule Amendment.

### III. CONCLUSION

**{¶ 35}** The Ohio Constitution grants the General Assembly the spending power, and the spending setoff enacted by R.C. 5747.502 falls squarely within the authority to establish priorities in deciding the amount of funding to provide for municipalities. The Constitution also places the responsibility for establishing and maintaining state courts on the legislature, and the deposit requirement seeks to do no more than to ensure that municipal and county courts keep pace with the increased number of cases that may be brought to enforce violations arising from the use of traffic cameras. Neither of these statutes intersects with the municipalities' exercise of their home-rule authority to enforce their traffic laws with automated-camera systems. Municipalities remain free in the sphere of local self-government to use traffic cameras, and the General Assembly does not encroach on municipal power by setting its own funding priorities and providing for the maintenance of state courts. Reasonable people may disagree with the policy choices supporting each of these laws, but it is not our role to pass upon either their wisdom or utility, *Erickson v. Morrison*, 165 Ohio St.3d 76, 2021-Ohio-746, 176 N.E.3d 1, ¶ 34. The Home Rule Amendment grants municipalities control over matters of local self-government, but it does not require the General Assembly to pay for it, either directly by appropriation or indirectly through the increased burdens caused by litigating citations based on traffic cameras in the state's courts. Rather, the Ohio Constitution affords the General Assembly discretion in deciding whether to allocate state funds to municipalities and in setting the costs and fees required for commencing actions in state court, and that discretion includes the decisions to reduce a municipality's share of the appropriation to local governments by the amount the municipality collects in traffic-camera fines and to require that municipality to pay its own way in collecting them.

**{¶ 36}** Consequently, the trial court did not err in denying Newburgh Heights' and East Cleveland's requests for preliminary injunctions prohibiting the

enforcement of the spending setoff and the deposit requirement. We therefore reverse the judgment of the Eighth District and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

———————————

Nicola, Gudbrandson & Cooper, L.L.C., Michael E. Cicero, and Luke McConville, for appellee village of Newburgh Heights.

Willa Hemmons, East Cleveland Director of Law, and Heather McCollough, Assistant Director of Law, for appellee city of East Cleveland.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Stephen P. Carney, Deputy Solicitor General, and Caitlyn Nestleroth Johnson and Iris Jin, Assistant Attorneys General, for appellants.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Zackary L. Stillings; and Garry E. Hunter, urging affirmance for amici curiae Ohio Municipal League and Ohio Municipal Attorneys Association.

Barbara J. Doseck, Dayton Director of Law, and John C. Musto, Deputy Director of Law, urging affirmance for amicus curiae city of Dayton.

Dale R. Emch, Toledo Director of Law, and Jeffrey B. Charles and John T. Madigan, Assistant Law Directors, urging affirmance for amicus curiae city of Toledo.

———————————