Williams, J.
 

 The relator, the city of Youngstown, Ohio, in this action in mandamus brought originally in this court, seeks to compel the auditor and treasurer of Mahoning county, Ohio, to transfer and pay to the relator its share of the undivided local government fund of the county without the deduction for the payment of a note executed and delivered under the provisions of Section 5546-18, General Code (117 Ohio Laws, 855), passed as an emergency measure and effective June 9, 1938.
 

 The case is submitted to this court upon the pleadings and the agreed statement of facts.
 

 By virtue of Section 5546-18 as found in 117 Ohio Laws, 855, the 92nd General Assembly, after making certain allocations from the sales tax for the years 1937 and 1938, appropriated from sales-tax funds to be paid out of current sales-tax revenues of 1939, and imposed upon the controlling board the duty to distribute the money, therein appropriated, to the various subdivisions of the state according to the relief load as evidenced by records in the office of the auditor of state for the first five months of 1938.
 

 Section 2 of Amended Senate Bill No. 486 (117 Ohio Laws, 855, 857), provided in substance that “in anticipation of the collection and distribution of the appropriation of one million five hundred thousand dollars for poor relief purposes in 1939” a county, municipality or township was empowered to borrow not in excess of 90 per cent of the anticipated revenues and
 
 *132
 
 issue notes therefor during the year 1938; and that the proceeds of such notes should be placed in a fund of the county, municipality or township issuing them for poor relief. The section then further provided:
 

 “Such notes * * * shall recite on their face that they are issued pursuant to this act and the resolution authorizing such notes.
 

 “The proceeds of such notes shall be placed in a fund in such county, municipality or township for poor relief. , The principal of and interest on such notes shall be paid from the proceeds of the appropriation herein made and distributed to the county, municipality or township under the provisions of this act, and such amounts shall be deemed appropriated for the payment of such notes at maturity. * * * ”
 

 While that section was in force the county commissioners of Mahoning county, who were then administering and financing poor relief for the entire county, in accordance with the provisions therein, issued a note for $45,495 dated June 27, 1938, and payable June 27, 1940, with interest, in anticipation of the collection and distribution of the fund of $1,500,-000 so appropriated.
 

 The 93rd General Assembly by act effective January 27, 1939 (Amended Senate Bill No. 41), amended Section 5546-18 and repealed all provisions relating to the $1,500,000 fund as well as those relating to the issuance of notes to borrow in anticipation of the collection of revenue and its distribution through the fund; but under the amended section the revenues from the sales tax were to be credited as follows: $12,000,000 for each of the years 1939' and 1940 to the local government fund (less certain amounts referred to therein) and the residue to the general revenue fund of the state. It further required that the money in the local government fund be distributed to the counties, each county’s share to be placed in the undivided local government fund in the treasury of the county.
 

 
 *133
 
 During the year 1939, the treasurer of Mahoning county secured from the local government fund in the state treasury, about $49,459.01 for each month during the year 1939. As this installment was received each month, it was placed in the undivided local government fund of the county. The county auditor, in making distribution from the latter fund to the county, the city of Youngstown and other subdivisions of the county for the last four months of 1939, claims the right to deduct, before distribution, from the amounts allocated to the county and its subdivisions an amount sufficient to set up a sinking fund to retire the note of $45,495 with interest at maturity.
 

 Was the so-called appropriation of the $1,500,000 valid?
 

 Since the biennium, for which the members of the 92nd General Assembly were elected, ended on the last day of December, 1938, the appropriation if such it were, was made from funds to be collected after the close of the biennium. It is therefore necessary to inquire into the extent of the law-making power of that body.
 

 The state Constitution is a limitation on power as distinguished from a grant of power;.and, since the state and federal Constitutions operate as restrictions on the law-making power of the legislative branch of state government, the General Assembly may pass any legislation not inhibited by the organic law of the state or nation.
 

 The only limitation on the power of the General Assembly as to appropriations is found in Section 22, Article II of the state Constitution: “No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years.” This provision is commented on in the following cases:
 
 State
 
 v.
 
 Medbery, 7
 
 Ohio St., 522;
 
 State, ex rel. Ross,
 
 v.
 
 Donahey, Aud.,
 
 93 Ohio St., 414, 113 N.
 
 *134
 
 E., 268, and
 
 State, ex rel. Ach,
 
 v.
 
 Braden,
 
 125 Ohio St., 307, 314, 181 N. E., 138. These authorities, while helpful, do not reach far enough to solve the problem which we have here as to the legality of the appropriation. The language employed in the Constitution, in our judgment, merely limits the time for and during which an appropriation may be made to two years from the time legislative action was taken with reference thereto. At the end of this two-year period, the appropriation lapses, but the constitutional provision does not prohibit the appropriation of excise revenues collected after the General Assembly making the appropriation has ceased to exist through the expiration of its biennium, providing the excise taxes have been previously or contemporaneously laid and imposed by valid enactment, and the appropriation sets apart revenues collected within two years after the appropriation is made.
 

 A diligent search has failed to reveal any decision holding that a state has no legislative power to provide for the application of revenues, collected from an excise tax after the expiration of the terms of its members, to the payment of notes or bonds issued in anticipation of such revenue and upon the agreement that the notes or bonds would be paid therefrom.
 

 Investigation discloses, however, that legislatures have acted upon the theory that the power exists, presumably because it is not inhibited by any constitutional provision.
 
 Johnson, Gov.,
 
 v.
 
 MacDonald,
 
 97 Colo., 324, 49 P. (2d), 1017;
 
 State, ex rel. Boynton, Atty. Genl.,
 
 v.
 
 State Highway Comm.,
 
 139 Kan., 391, 32 P. (2d), 493;
 
 Hubbell
 
 v.
 
 Leonard,
 
 6 F. Supp., 145;
 
 Streit
 
 v.
 
 Lujan, Comptroller,
 
 35 N. M., 672, 6 P. (2d), 205.
 

 "While it has been assumed that the setting aside of $1,500,000 was an appropriation within the meaning of the constitutional provision, in reality it was the “earmarking” of excise revenue to provide for the
 
 *135
 
 repayment of money borrowed under statutory authorization. If a charge cannot legally be made upon revenues to be collected in order to insure the payment of public notes or bonds about to be issued, few will be willing to purchase such securities. Placing a charge upon future public revenue to meet obligations of that character is at least a common practice. The power to charge payment out of specific revenues is essential to the power to borrow.
 

 Since a so-called appropriation of this kind is not forbidden by the state or federal Constitutions, the provision as to the appropriation was valid and constitutional.
 

 The note, given by the county commissioners in anticipation of funds to be collected, was executed and delivered while the statute authorizing it and making appropriation for its payment was in force. The statute, therefore, became a part of the contract as evidenced by the note.
 
 City of Cincinnati
 
 v.
 
 Pub. Util. Comm.,
 
 98 Ohio St., 320, 121 N. E., 688;
 
 Milwaukee Mechanics’ Ins. Co.
 
 v.
 
 Russell,
 
 65 Ohio St., 230, 255, 62 N. E., 338;
 
 Insurance Co.
 
 v.
 
 Leslie,
 
 47 Ohio St., 409, 24 N. E., 1072. The rule is well stated in
 
 Farmers & Merchants Bank of Monroe, N. C.,
 
 v.
 
 Federal Reserve Bank of Richmond, Va.,
 
 262 U. S., 649, at 660, 67 L. Ed., 1157, 43 S. Ct., 651, 30 A. L. R., 635: “Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge.” See also
 
 Hendrickson, Judge,
 
 v.
 
 Apperson,
 
 245 U. S., 105, 62 L. Ed., 178, 38 S. Ct., 46;
 
 Robbins
 
 v.
 
 Life Ins. Co. of Va.,
 
 169 Tenn., 507, 89 S. W. (2d), 340; 8 Ohio Jurisprudence, 519, 520, Sections 381 and 382; 12 American Jurisprudence, 769, Section 240.
 

 
 *136
 
 What, then, was the effect of the repeal of the statute after the note was issued and outstanding?
 

 It is a well recognized principle that there is no such thing as an irrepealable statute, for a legislature has no power to bind successive legislatures.
 
 Bank of Toledo
 
 v.
 
 City of Toledo,
 
 1 Ohio St., 622;
 
 Milan & Richland Plank-Road Co.
 
 v.
 
 Husted, Treas.,
 
 3 Ohio St., 578;
 
 Mackenzie
 
 v.
 
 State, ex rel. McMahon, Pros. Atty.,
 
 76 Ohio St., 369, 81 N. E., 638; 1 Cooley’s Constitutional Limitations (8 Ed.), 246; 37 Ohio Jurisprudence, 348, Section 52. The General Assembly had power to enact an amended section and repeal the prior law, but in doing so could not interfere with vested rights or impair the obligations of existing contracts in violation of Section 28, Article II of the state Constitution and the contract clause of Section 10 of Article I of the federal Constitution.
 
 Goodale
 
 v.
 
 Fennell,
 
 27 Ohio St., 426, 22 Am. Rep., 321;
 
 Safford, Supt. of Ins.,
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 119 Ohio St., 332, 164 N. E., 351;
 
 State, ex rel. Public Institutional Building Authority,
 
 v.
 
 Griffith, Secy. of State,
 
 135 Ohio St., 604, 22 N. E. (2d), 200.
 

 The respondents claim that there is no method of paying the note except through the so-called appropriation of $1,500,000. On the other hand the relator claims that the county commissioners should have provided for the payment of the note in the budget for the fiscal year of 1940 under Section 5625-23, General Code, which provides that there should be set up in the budget the amount required for debt charges, and that the budget commission should have made a levy for the payment of the note under the provisions of Section 5625-23, which provides for levies for debt charges not cared for “by levies outside of the ten-mill limitation, including levies necessary to pay notes issued for emergency purposes.”
 

 Relator also contends that the note could be met by
 
 *137
 
 issuing delinquent tax bonds under Section 2293-43, General Code.
 

 If we assume that the indebtedness on the note can be discharged by the county as claimed by the relator, we still have the question whether there would be an impairment of the contract evidenced by the note and an interference with vested rights. The extent of the impairment is not material for any encroachment on constitutional rights is an undue and forbidden interference with and a denial of those rights. If the value of contractual rights has been diminished, then there is an impairment.
 
 Goodale
 
 v.
 
 Fennell, supra;
 
 8 Ohio Jurisprudence, 578, Sections 442, 443.
 

 The rule is well stated in the case of
 
 State of Louisiana, ex rel. Ranger,
 
 v.
 
 City of New Orleans,
 
 102 U. S. (12 Otto), 203, 26 L. Ed., 132: “The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced, — by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. The Latin proverb,
 
 qui cito dat bis dat,
 
 he who gives quickly gives twice,— has its counterpart in a maxim equally
 
 sound,
 
 — qiñ
 
 serins solvit, minus solvit,
 
 — he who pays too late, pays less. Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition. ’ ’
 

 Under this case at page 132 of the Law Edition authorities are collected to sustain the principle that an impairment of the remedy works an impairment of contractual rights. Wh.en the note was issued in anticipation of the collection of particular revenue it became in essence a charge upon such revenue and it tended to “retard the enforcement of the contract” to compel the owner and holder of the note to resort for
 
 *138
 
 its payment to funds of the county upon which the indebtedness was not a charge.
 

 There is, however, another horn to the dilemma. The county is entitled to the protection of its constitutional rights under the contract, as the rule protecting vested rights and contractual obligations applies to the state or subdivisions thereof when a party to a contract.
 
 Deneen
 
 v.
 
 Deneen,
 
 293 Ill., 454,, 127 N. E., 700;
 
 State of Louisiana, ex rel. Hubert,
 
 v.
 
 City of New Orleans,
 
 215 U. S., 170, 176, 54 L. Ed., 144, 30 S. Ct., 40;
 
 Lynch
 
 v.
 
 United States,
 
 292 U. S., 571, 78 L Ed., 1434; 54 S. Ct., 840;
 
 McBride
 
 v.
 
 Allegheny County Retirement Board,
 
 330 Pa., 402, 199 A., 130;
 
 State, ex rel. Boynton, Atty. Genl.,
 
 v.
 
 Kansas State Highway Comm.,
 
 139 Kan., 391, 32 P. (2d), 493; 25 Euling Case Law, 909, Section 162; 37 Ohio Jurisprudence, 348, 349, Section 52; 12 Corpus Juris, 996.
 

 If the nóte is paid in the manner contracted for by the respondents the burden of payment is put on a different set of taxpayers and in view of the fact that the statute providing for the so-called appropriation is a part of the contract, contractual rights would be interfered with and impaired by so shifting the burden. Of course no one can avail himself of a contravention of a constitutional right who is not injured thereby. 16 Corpus Juris Secundum, 178. Here not only is the owner and holder of the note injured by the “infraction” but also the county.
 
 Deneen
 
 v.
 
 Deneen, supra; Pacific Indemnity Co.
 
 v.,
 
 Myers,
 
 211 Cal., 635, 296 P., 1084;
 
 City of Montpelier
 
 v.
 
 Gates,
 
 106 Vt., 116, 170 A., 473;
 
 Bd. of Edn. of City of Lincoln Park
 
 v.
 
 Bd. of Edn. of City of Detroit,
 
 245 Mich., 411, 222 N. W., 763.
 

 It.follows that the county auditor'may, before distribution, deduct a sufficient amount from the distributive share of the county and its subdivisions in the undivided local government fund, for the retirement of the note.
 

 Since the county auditor is entitled to set up a sink
 
 *139
 
 ing fund for payment of the note out of moneys in the undivided local government fund, a writ of mandamus is denied.
 

 Writ denied.
 

 Weygandt, C. J., Day, Zimmerman, Matthias and Hart, JJ., concur.
 

 Myers, J., dissents.