The STATE, ex rel. BOND et al., Appellants,

v.

CITY OF MONTGOMERY et al., Appellees.

[Cite as *State, ex rel. Bond, v. Montgomery* (1989), 63 Ohio App.3d 728.]

Court of Appeals of Ohio,
Hamilton County.

No. C–880526.

Decided Aug. 9, 1989.

*Strauss & Troy, M. Michele Fleming,* and *George H. Palmer,* for appellants.

*Santen, Shaffer & Hughes* and *Richard B. Dusterberg,* for appellees.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, which also includes the memorandum of the *amicus curiae,* the assignment of error, the briefs and the arguments of counsel.

Relators-appellants, residents of the city of Montgomery, Ohio ("city"), appeal from the trial court's order denying their application for a declaratory

judgment[1] and for a peremptory or alternative writ of mandamus to compel the respondent-appellee, the Montgomery City Council, to certify an initiative petition to the Hamilton County Board of Elections for the November 8, 1988 election. Included in the relators' single assignment of error are four issues in which they contend that: (1) absent an exception in the city charter, Section 1f, Article II of the Ohio Constitution imposes a mandatory duty upon the city council to certify the initiative petition for a vote of the electors, (2) the initiative ordinance does not impair the city's obligation of contract as the city alleges, (3) city council violated the "sunshine" provisions of the charter by conducting its deliberations on the initiative petition in closed executive session, and (4) the trial court's judgment is against the manifest weight of the evidence. Relators' assignment of error is well taken as to each of these issues.

The city is a charter city. On March 2, 1988, the relators filed an initiative petition with the city council proposing to repeal the provisions of Montgomery Codified Ordinances Section 44.15, previously passed by council to reduce the city's earnings tax credit from one percent to one-half percent for residents working in other municipalities having an earnings tax. The effect of the proposed initiative ordinance was to nullify revenues available from the tax-credit reduction for use in capital improvements for Montgomery Road and for municipal parks and facilities.

Although no defects in form or sufficiency are alleged, the city refuses to certify the proposal to the board of elections on grounds that the initiative ordinance is unconstitutional and void *ab initio*. The city maintains that, as a tax-revenue measure, the tax-credit reduction proposed by the initiative ordinance is not subject to repeal by the electorate, and that if passed, it would result in an impairment of the obligation of the city's contracts with third parties.

Relators brought an action for declaratory relief and mandamus seeking to compel the city council to certify the initiative ordinance to the board of elections for submission to the electorate. Following an evidentiary hearing, on August 2, 1988, the trial court issued separate findings of fact and conclusions of law and denied the requested relief. The trial court determined that the initiative was not appropriate to repeal a "tax measure" and on its

---

**1.** Although relators' complaint expressly seeks declaratory relief, for some unexplained reason they simultaneously filed a document which included a "motion" for declaratory judgment combined with their application for a peremptory or alternative writ of mandamus. We have previously held that a declaratory judgment is the subject of a complaint and not a motion. *Fuller v. German Motor Sales, Inc.* (1988), 51 Ohio App.3d 101, 554 N.E.2d 139.

face was an unconstitutional "impairment of the obligation of the city's contractual relationships." Relators have appealed from this order.

I

As to the first issue, the city concedes that *State, ex rel. Sharpe, v. Hitt* (1951), 155 Ohio St. 529, 44 O.O. 489, 99 N.E.2d 659, stands for the proposition that the initiative power is available to repeal an ordinance passed by a city council in the same manner as the referendum. However, it maintains that just as Section 8.04, Article VIII of the city charter expressly prohibits use of a referendum to repeal tax-revenue measures, the electorate cannot obtain a tax rollback by exercising the initiative power.[2]

The right of initiative is reserved to all citizens of Ohio by Section 1f, Article II of the Constitution of Ohio:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

Similarly, Section 8.01 of the charter provides that "the initiative, referendum and recall are reserved by this Charter to the people of Montgomery to be exercised as prescribed in this charter." Unlike the referendum and its limitations in Section 8.04, the charter does not provide corresponding limitations to the right of initiative, and a charter city's own initiative and referendum provisions prevail over R.C. 731.28 *et seq.* as expressly provided in R.C. 731.41. See *State, ex rel. Kurtz, v. Shaffer* (1951), 155 Ohio St. 491, 44 O.O. 445, 99 N.E.2d 479.

---

**2.** In noncharter cities R.C. 731.30 excepts the following classes of ordinances from the operation of the referendum: (1) provision for appropriations of current expenses, (2) street improvements petitioned for by a majority of the owners of the front footage to be benefited and assessed for the cost, and (3) emergency ordinances passed for the immediate preservation of the public peace, health or safety.

Section 8.04, Article VIII of the City of Montgomery Charter limits the referendum power as follows:

"The referendum shall not be applicable to:

"1. Legislation appropriating money;

"2. Legislation levying a tax authorized by, or pursuant to, Section 9.01 or Section 9.02 of this Charter;

"3. Legislation providing for improvements petitioned for by the owners of a majority of the foot frontage of the property benefited and to the especially assessed therefor;

"4. Legislation submitting any measure to a vote of the electors;

"5. Legislation subsequent to the first legislative measure of a series of legislative steps required to be taken to accomplish a particular purpose or objective; or

"6. Emergency legislation passed in compliance with the provisions of this Charter."

■ The right of the people to petition the government for any redress of grievances in the First Amendment to the United States Constitution is reinforced by Section 2, Article I of the Ohio Constitution, which states:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary * * *."

Incidental to the exercise of governmental power by the people is the initiative process. The charter's initiative provisions must be liberally construed in favor of the power reserved to the electorate so as to permit rather than to obstruct its exercise and to promote the object sought. *State, ex rel. Sharpe, v. Hitt, supra; State, ex rel. King, v. Portsmouth* (1986), 27 Ohio St.3d 1, 27 OBR 73, 497 N.E.2d 1126.

■ While Section 8.02, Article VIII of the charter allows council to "determine within thirty days whether the petition is valid and sufficient according to law," council's review is restricted to such matters as timely filing, regularity of the signatures, and the petition's form. *Kahle v. Rupert* (1918), 99 Ohio St. 17, 122 N.E. 39. No express or implied limitation or exception in the city's charter empowers council to declare an initiative ordinance unconstitutional, and such an assertion cannot be rationalized with the holding in *Mobil Oil Corp. v. Rocky River* (1974), 38 Ohio St.2d 23, 26, 67 O.O.2d 38, 39, 309 N.E.2d 900, 902, involving local-zoning legislation cases:

"It is not fatal to such appeal that the constitutional claim was not initially argued before the administrative officer or board, for the issue of constitutionality can never be *administratively* determined." (Emphasis *sic.*)

Respondent's reliance upon *Bramblette v. Yordy* (1970), 24 Ohio St.2d 147, 53 O.O.2d 348, 265 N.E.2d 273, for the proposition that the initiative power is not available to accomplish a tax rollback is misplaced for two reasons: (1) that case dealt with a referendum rather than initiative, and (2) the charter contained a limitation upon the referendum power relative to all legislation providing "for raising revenue."

■ Therefore, unless authorized by its charter, a city council has no power to limit the right of the initiative reserved to the electorate on grounds of unconstitutionality, and if the petition is in proper form and contains sufficient signatures, the city's duty under this charter is to certify the initiative ordinance to the board of elections so that it can be placed on the ballot.

## II

In the alternative the city argues that, even if the initiative power is available to challenge a tax-revenue measure, the initiative ordinance on its

face reflects a violation of Section 10, Article I of the United States Constitution by impairing the obligation of the city's contracts with third parties, and that the issue of constitutionality is, therefore, ripe for judicial review. We disagree because: (1) the constitutionality of an initiative ordinance can be judicially determined only after its enactment, and (2) the initiative ordinance does not violate the Contract Clause.

First, the city maintains that if an initiative ordinance is unconstitutional when passed, it is void *ab initio* as held in *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 25 OBR 125, 495 N.E.2d 380. In *Ferguson, supra,* at 80, 25 OBR at 133, 495 N.E.2d at 388, the Supreme Court stated the following at footnote 4:

" * * * Similarly, in the instant case, the electorate had no constitutional right to enact unconstitutional legislation by way of initiative petition."

Unlike the case *sub judice,* in *Ferguson* the electorate passed the initiative before its constitutionality was challenged, and the language above must be viewed in this context.

■ It is immaterial whether the legislative authority or the electorate by the initiative proposes the ordinance since the same rule requiring the city to be adversely affected applies in both situations. A court will not interfere with the legislative process by mandamus to block enactment of an ordinance because of claims that it is unconstitutional. *State, ex rel. Kittel, v. Bigelow* (1941), 138 Ohio St. 497, 21 O.O. 380, 37 N.E.2d 41. Where a constitutional amendment repealing certain state tax laws was proposed by initiative petition, but challenged before the election, in *State, ex rel. Cramer, v. Brown* (1983), 7 Ohio St.3d 5, 6, 7 OBR 317, 318, 454 N.E.2d 1321, 1322, the Supreme Court said:

"Similarly, we reject relator's argument that the amendment proposed by Issue 3 would be unconstitutional if approved. It is well-settled that this court will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature." See, also, *State, ex rel. Williams, v. Iannucci* (1988), 39 Ohio St.3d 292, 530 N.E.2d 869; *State, ex rel. Walter, v. Edgar* (1984), 13 Ohio St.3d 1, 13 OBR 377, 469 N.E.2d 842.

■ Secondly, the city argues that the initiative ordinance violates Section 10, Article I of the United States Constitution, which states:

"No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

This prohibition applies equally to legislative action and legislation due to direct action by the people. *Ross v. Oregon* (1913), 227 U.S. 150, 163, 33 S.Ct.

220, 223, 57 L.Ed. 458, 464; *Middletown v. Ferguson, supra.* An impermissible impairment of existing city contract obligations is present when it prevents a party from fulfilling its obligation under the contract, and there is an accompanying decrease in the contract's value. *Ferguson, supra,* 25 Ohio St.3d at 77, 25 OBR at 129–130, 495 N.E.2d at 385; *State, ex rel. Youngstown, v. Jones* (1939), 136 Ohio St. 130, 16 O.O. 73, 24 N.E.2d 442. To constitute an impermissible impairment, either the legislation or the initiative ordinance must alter the obligations between the parties to the contract.

■ The Supreme Court set forth comprehensive guidelines for review of impairment of obligations of contracts in *Middletown v. Ferguson, supra.* In that case, property owners proposed an initiative ordinance to repeal all enabling legislation related to the contracts for a street-widening project. Holding that the prohibition of Section 10, Article I is not absolute, the Supreme Court adopted the following two-step analysis to determine the constitutionality of an ordinance which allegedly impairs the obligation of contract: (1) does the initiative ordinance operate as substantial impairment of a contractual relationship, and (2) if the impairment is substantial, can the prohibition of Section 10, Article I be harmonized with the initiative power reserved to the electorate and the reasonable necessity to serve an important public purpose?

■ In determining if an impairment is substantial, judicial scrutiny increases with the severity of the impairment. Accordingly, two considerations are relevant: (1) the extent that reasonable expectations in the contract have been disrupted, and (2) the extent of the party's reliance on the obligation impaired. Unlike *Middletown v. Ferguson, supra,* in which the Supreme Court concluded that the initiative was void *ab initio* because its thrust was to abolish the street-improvement project altogether, in the case *sub judice* the rights of the city's contracts for capital improvements will remain unchanged if the electorate approves the initiative. The initiative ordinance dealing with the city's income tax credit will not abrogate or repudiate the city's capital-improvement contracts with third parties or repeal the city's power to perform them. Nothing in the record suggests that loss of revenue by enactment of the initiative ordinance will change the values or render the city less likely to keep its bargain although it may be required to seek other sources to pay the contract. This fact was specifically corroborated by the city's bond counsel.

■ Most persuasive is that none of the capital-improvement contracts with third parties is conditioned upon revenues from the city's income tax as the source for payment. The city's ordinances authorizing the anticipation notes and bonds for these projects expressly provide that the city's property tax is pledged to their payment. Therefore, the record contradicts the trial court's

conclusion that the initiative ordinance operates as a substantial impairment of the city's contractual relationship with third parties.

### III

The relators next argue that the city council violated the terms of the charter by conducting deliberations and taking official action on the initiative petition in an executive session closed to the public. We agree.

R.C. 121.22(A) (the sunshine law) is not applicable in every case involving meetings conducted by city council, since a charter municipality has the right to determine by charter the manner in which meetings will be held. *Hills & Dales, Inc. v. Wooster* (1982), 4 Ohio App.3d 240, 4 OBR 432, 448 N.E.2d 163. If a city does choose to draft its own rules concerning the meeting of the public body and the rules are included in its charter, the city council must abide by those rules. See *State, ex rel Craft, v. Schisler* (1988), 40 Ohio St.3d 149, 532 N.E.2d 719.

In the case *sub judice,* the city did formulate and include in its charter the guidelines with which city council must comply when conducting its meetings. (Montgomery Codified Ordinances Section 30.05[B].) It should be noted that these guidelines are nearly identical to those set forth in R.C. 121.22(A). The ordinance states in pertinent part:

"All meetings of the public bodies of the municipality shall be public meetings open to the public at all times unless otherwise specified in this section. Public officials shall take official action and shall conduct all deliberations upon official business only in such open meetings unless the subject matter is specifically exempt by law."

The city asserts that the executive session conducted to determine the fate of the initiative was procedurally correct pursuant to Montgomery Codified Ordinances Section 30.05(C)(3), under an exception to this section which states:

"The members of a public body may hold an executive session * * * to confer with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action."

The city has the burden of demonstrating that the exception above is applicable to the case herein. See *State, ex rel. National Broadcasting Co., v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph two of the syllabus.

After reviewing the record, we cannot find that the city met its burden. It has offered no proof to show that city council's certification of (or failure to

certify as in this case) the petition initiative would create a dispute involving the public body that would be the subject of pending or imminent court action.

"Pending" court action has been described as that period of time between the inception of the lawsuit and rendition of final judgment. See *Ex parte Craig* (C.A.2, 1921), 274 F. 177. There was no action "pending" at the time city council conducted the executive session. Although no Ohio case has specifically determined the scope or meaning of the word "imminent," it has been defined as an action or event "on the point of happening" or one that is "impending." Black's Law Dictionary (5 Ed.1979) 676. Review of the sequence of events in the case *sub judice* demonstrates that city council had the choice to certify or not to certify the initiative petition to the board of elections. No evidence supports the assertion that a lawsuit was "on the point of happening" or was indeed "impending."

Since we have determined that the exception contained in Montgomery Codified Ordinances Section 30.05(C)(3) is not applicable, we conclude that the city council failed to comply with the terms of the charter by conducting an executive session, closed to the public, to consider the merits of the initiative.

## IV

Finally, the relators contend that the trial court's judgment is against the manifest weight of the evidence. The test for an assignment of error addressing the weight of the evidence is whether the judgment is supported by some competent, credible evidence on all essential elements. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. For the reasons expressed in our discussion of the first and second issues we find that the trial court's judgment was against the manifest weight of the evidence.

The judgment of the trial court is reversed, and the city is hereby ordered to certify the initiative petition filed by the relators to the Hamilton County Board of Elections within five days of the date of this decision and mandate.

*Judgment accordingly.*

SHANNON, P.J., KLUSMEIER and GORMAN, JJ., concur.