[Cite as *State ex rel. McGrail v. Lordstown Village Council*, 2025-Ohio-4630.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel. MARK R. MCGRAIL, | CASE NO. 2024-T-0072 |
| Relator-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| LORDSTOWN VILLAGE COUNCIL, et al., | Trial Court No. 2023 CV 01713 |
| Respondents-Appellees. | |

## OPINION AND JUDGMENT ENTRY

Decided: October 6, 2025
Judgment: Affirmed

*Mark R. McGrail*, pro se, 3656 Goldner Lane, S.W., Warren, OH 44481 (Relator-Appellant).

*Matthew M. Ries*, Harrington, Hoppe & Mitchell, LTD., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Respondents-Appellees).

ROBERT J. PATTON, P.J.

{¶1} Appellant, Mark R. McGrail ("McGrail"), appeals from the decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellees, Lordstown Village Council, et al. ("the Village"). For the following reasons, we affirm the trial court's decision.

## Substantive and Procedural History

{¶2} On November 15, 2023, McGrail filed a "Verified Complaint in Declaratory Judgment and Injunction for Enforcement of O.R.C. § 121.22." In the complaint, McGrail

alleged that on seven occasions, between November 2021 and September 2023, the Village held executive session for unapproved matters or purposes under R.C. 121.22, otherwise known as the Open Meetings Act ("OMA"). Counts 1 through 7 of the complaint pertain to specific meeting dates, while in count 8, McGrail alleged that the Village did not reconvene into open session after holding the executive sessions, or if they did, they failed to keep full accurate minutes of the meetings, in violation of the OMA. Further, McGrail sought to enjoin the Village from holding executive sessions for the alleged improper purposes, to enjoin the Village to keep and maintain full and accurate minutes including the reconvening of open session after an executive session, and a civil forfeiture payment to McGrail of $500 for each violation, along with court costs and attorney fees.

{¶3}   On February 16, 2024, the Village filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and Civ.R. 12(B)(6). In its motion, the Village asserted that counts 1 through 6 and count 8 should be dismissed as moot, as they are identical to claims previously litigated in trial court Case No. 2022-CV-01498 (the Open Government Advocates Case"), brought by Open Government Advocates against the Village. The motion to dismiss further asserted that the executive session held during the meeting addressed in count 7 was for a proper purpose under the OMA, and therefore not a viable claim.

{¶4}   The Village attached six exhibits to its motion to dismiss: (1) the complaint from Open Government Advocates Case ("Exhibit A"); (2) an agreed entry from the Open Government Advocates Case ("Exhibit B"); (3) a letter requesting to submit an objection on behalf of the Village of an amendment to an application filed by Clean Energy Future – Trumbull, LLC, to be filed with the Ohio Power Siting Board ("Exhibit C"); (4) a complaint

and request for relief brought by the Village against Clean Energy Future – Trumbull, LLC, timestamped as received on July 24, 2023, with the Ohio Power Siting Board of Ohio ("Exhibit D"); (5) transcripts of proceedings before the Ohio Power Siting Board held on August 28, 2023 in *In the Matter of the Application of Clean Energy Future – Trumbull, LLC, Application for a Second Amendment to the Certificate of Environmental Compatibility and Public Need* ("Exhibit E"); and (6) an Entry entered on October 19, 2023 on *In the Matter of the Application of Clean Energy Future-Trumbull, LLC Application for a Certificate of Environmental Compatibility and Public Need for an Electric Generation Facility in Trumbull County, Ohio* ("Exhibit F").

{¶5} McGrail filed "Relator's Memorandum in Opposition to Respondents' Motion [to] Dismiss" on March 11, 2024. On March 19, 2024, the Village filed its "Reply in Support of Motion to Dismiss."

{¶6} McGrail then filed "Relator's Amended Memorandum in Opposition to Respondent's Motion to Dismiss," on March 22, 2024. On March 26, 2024, the Village filed its "Reply to Relator's Amended Memorandum in Opposition to Motion to Dismiss."

{¶7} On May 2, 2024, the trial court issued a judgment entry converting the Village's motion to dismiss to a motion for summary judgment, setting the matter for a memo only hearing on June 21, 2024, and instructing that "[r]elator may respond to the motion for summary judgment on or before May 31, 2024 if he wishes to amend his response as a summary judgment and Respondents may amend their response on or before June 14, 2024."

{¶8} On June 5, 2024, the Village filed its "Reply in Support of Motion to Dismiss/Motion for Summary Judgment." On June 12, 2024, McGrail filed his "Motion for

Case No. 2024-T-0072

Leave to File Sur-Reply Brief or in the Alternative Response to Summary Judgment [Instanter]." On June 13, 2024, the Village filed its "Respondent's Opposition to Relator's Motion for Leave to File Sur-Reply Brief or in the Alternative Response to Summary Judgment Instanter." On June 14, 2024, McGrail filed "Realtor's Amended Motion for Leave to File Sur-Reply Brief or in the Alternative Response to Summary Judgment [Instanter]." On June 14, 2024, the Village filed "Respondents' Opposition to Relator's Amended Motion for Leave to File Sur-Reply Brief or in the Alternative Response to Summary Judgment Instanter."

{¶9}   On August 19, 2024, the trial court granted summary judgment in favor of the Village.

{¶10}  On September 18, 2024, McGrail filed this appeal.

**Assignments of Error**

{¶11}  McGrail asserts four assignments of error on appeal:

{¶12}  "[1.] The trial court committed reversible error by granting summary judgment before the pleadings were closed. (T.d. 33)"

{¶13}  "[2.] The trial court committed reversible error by converting the Motion to Dismiss to a motion [for] summary judgment without a predefined procedure to be followed that results in a bona fide motion for summary judgment. (T.d. 27)"

{¶14}  "[3.] The trial court committed reversible error by mistaking the date January 3, 2023 as January 3, 2022. (T.d. 33)"

{¶15}  "[4.] The trial court committed reversible error by holding that the executive session complained of in Count 7 was permissible. (T.d. 33)"

Case No. 2024-T-0072

**Standard of Review**

{¶16}   An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo. *Pirock v. Crain*, 2020-Ohio-869, ¶ 101 (11th Dist.), citing *Ivancic v. Enos*, 2012-Ohio-3639, ¶ 33 (11th Dist.). A motion to dismiss pursuant to Civ.R. 12(B)(6) is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 1992-Ohio-73, ¶ 9, citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). When ruling on a Civ.R. 12(B)(6) motion, a court may not rely upon evidence or allegations outside the complaint. *State ex rel. Fuqua v. Alexander*, 1997-Ohio-169, ¶ 5, citing *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d. 580, 581 (1996).

{¶17}   Appellate courts review a summary judgment order de novo. "We review de novo a trial court's order granting summary judgment." *Pirock* at ¶ 111, citing *Sabo v. Zimmerman*, 2012-Ohio-4763, ¶ 9 (11th Dist.). "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law." *Id*. Thus, we review McGrail's assignments of error under a de novo standard'

**First Assignment of Error**

{¶18}   In McGrail's first assignment of error he contends that the trial court erred by granting summary judgment when only a complaint was filed, and the Village did not file an answer. Specifically, McGrail asks, "May a trial court grant summary judgment based on a single pleading, a complaint?" McGrail contends that "[i]n the absence of an

Case No. 2024-T-0072

answer summary judgment cannot be granted because all the unanswered averments of the complaint must be deemed admitted pursuant to Civ.R. 8(D)."

{¶19} The Ohio Civil Rules describe "responsive pleadings" to a civil complaint, which may be either in an Answer or Motion to Dismiss filed pursuant to Civ.R. 12. Civ.R. 12(A)(1) explains in relevant part that "[t]he defendant shall serve his answer within twenty-eight days after service of the summons and complaint upon him. . . ." Civ.R. 12(B)(1)-(7) lists defenses to claims that may be made by motion and further explains "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . . When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56."

{¶20} This Court has specifically addressed situations where a trial court may consider matters outside of the pleadings without converting a Civ.R. 12 motion to a motion for summary judgment pursuant to Civ.R. 56:

> [A] court may generally take judicial notice of at least some matters outside of the pleadings in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment, such as copies of other courts' decisions and judgment entries related to cases before it. *State ex rel. Kolkowski v. Bd. of Commrs. of Lake Cty.*, 11th Dist. Lake No. 2008-L-138, 2009-Ohio-2532, ¶ 31; *see also State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 10 (finding it appropriate to take judicial notice of a dismissal entry in a separate case to decide whether dismissal in a prohibition claim was warranted); *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, ¶ 26 (courts can take judicial notice of appropriate matters in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment); *Pirock v. Crain*, 11th Dist. No. 2019-T-0027, 2020-Ohio-869, ¶ 104.

Case No. 2024-T-0072

*Lanza v. Lanza*, 2020-Ohio-6805, ¶ 18 (11th Dist.).

{¶21} Additionally, when a motion to dismiss is filed and then subsequently converted to a summary judgment motion, the time to file an answer is tolled until the summary judgment motion is resolved. *State ex rel. Zimmerman v. Tompkins*, 1996-Ohio-211, ¶ 8, citing Civ.R. 12(A) and (B). "The filing of a Civ.R. 12(B)(6) motion to dismiss is an alternative to answering the complaint. *Baker v. Ohio Dept. of Rehab. & Corr.,* 144 Ohio App.3d 740, 754, 2001-Ohio-2553, 761 N.E. 2d 667. A defendant who files such a motion does not have to answer the complaint until after the motion is decided; if the defendant prevails on the motion, he or she may never have to answer. *Id.*" *Cromartie v. Goolsby*, 2010-Ohio-2604, ¶ 14 (8th Dist.). *See also PSE Credit Union, Inc. v. Wells*, 2016-Ohio-7780, ¶ 11 (8th Dist.).

{¶22} Here, McGrail filed his complaint on November 15, 2023. On February 16, 2024, after several motions for leave to plead were granted, the Village timely filed its motion to dismiss. The trial court converted the Village's motion to dismiss to a motion for summary judgment on May 2, 2024. After both parties briefed the issues, the trial court granted summary judgment in favor of the Village on August 19, 2024, and therefore the Village was not required to file an answer.

{¶23} McGrail cites *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2019-Ohio-3730, (11th Dist.) (the "*Ames* case"), contending that the trial court in that case required an answer when the motion to dismiss was converted into a motion for summary judgment. McGrail's reliance on the aforementioned case is misplaced. In the *Ames* case, Ames filed a complaint, the defendant filed an answer. Without leave from the trial court, Ames filed an amended complaint. The defendant filed a motion to dismiss or in the

Case No. 2024-T-0072

alternative, a motion for summary judgment. Ames filed a brief in opposition with a cross-motion for summary judgment. The trial court then issued a judgment entry converting the defendant's motion to dismiss to a motion for summary judgment. At that point, the defendant's time to file an answer to Ames's amended complaint was tolled pending the disposal of the converted motion for summary judgment. *Zimmerman* at ¶ 8. The defendant then filed an answer. There is nothing in the Ames case to support McGrail's argument that a defendant is required to answer a complaint after a motion to dismiss is converted to a motion for summary judgment.

{¶24} Accordingly, McGrail's first assignment of error is without merit.

## Second Assignment of Error

{¶25} In McGrail's second assignment of error, he contends that "[b[efore a court may 'convert' a motion to dismiss to a motion for summary judgment, there must be a predefined procedure to be followed that results in a bona fide motion for summary judgment."

{¶26} Further, McGrail asserts that "[t]he Civil Rules provide no procedure to be followed when a court 'converts' a motion to dismiss to a motion for summary judgment." However, this is a factually incorrect statement.

{¶27} As mentioned above, Civ.R. 12(B) explicitly states the procedure. "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and *disposed of as provided in Rule 56*. . . . All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." (Emphasis added.) Civ.R. 12(B).

Case No. 2024-T-0072

{¶28} "'A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Thus, the movant may not rely on allegations or evidence outside the complaint; otherwise, the motion must be treated, with reasonable notice, as a Civ.R. 56 motion for summary judgment.'" *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2023-Ohio-263, ¶ 10 (11th Dist.), quoting *State ex rel. Hanson*, 1992-Ohio-73 at ¶ 9.

{¶29} The trial court issued a judgment entry on May 2, 2024, converting the Village's motion to dismiss to a motion for summary judgment. In the entry, the trial court explained the procedure that would follow:

> The Court has considered the pleadings, the motion, the response, and the applicable law.
>
> Respondents have submitted extraneous materials in the motion to dismiss. . . . It is the trial courts 'responsibility either to disregard extraneous material or to convert a motion to dismiss into a motion for summary judgment when additional materials are submitted.' *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 18. If a 12(B)(6) motion presents matters outside the pleading, 'and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment.' Civ.R. 12(B). Prior to converting a motion to dismiss for failure to state a claim into a motion for summary judgment, a trial court must give actual notice to the parties and provide an opportunity to respond. *State ex rel. Baran v. Fuerst*, 55 Ohio St.3d 94, 97, 563 N.E.2d 713 (1990).
>
> Because extraneous materials were submitted and are necessary to determine the motion, this matter shall be converted to a motion for summary judgment and set for memo only hearing on June 21, 2024. Realtor may respond to the motion for summary judgment on or before May 31, 2024 if he wishes to amend his response as a summary judgment and Respondents may amend their response on or before June 14, 2024.

{¶30} Our standard of review when analyzing whether a trial court properly converted a motion to dismiss to a motion for summary judgment is de novo. *Pirock*, 2020-Ohio-869 at ¶ 101 (11th Dist.). The trial court can take judicial notice of certain documents without converting a motion to dismiss to a motion for summary judgment. *Lanza*, 2020-Ohio-6805 at ¶ 18 (11th Dist.). If the motion to dismiss contains extraneous documents attached that are necessary to determine the motion, it must be converted to a motion for summary judgment. Civ.R. 12(B).

{¶31} Upon determining the motion to dismiss contained extraneous materials to be used by the trial court, it properly converted the motion to dismiss to a motion for summary judgment and gave the parties notice and opportunity to respond. The judgment entry explained that the motion would be treated as a motion for summary judgment. At that point, the parties followed the procedure the trial court set forth for them in its judgment entry. Following the relevant law, the trial court then disposed of the case pursuant to Civ.R. 56, granting judgment in favor of defendants, the Village.

{¶32} Accordingly, McGrail's second assignment of error is without merit.

## Third Assignment of Error

{¶33} In McGrail's third assignment of error, he contends that the trial court mistook the meeting date of January 3, 2023, that McGrail alleged violations, with the actual date of January 3, 2022, causing reversible error when it then deemed McGrail's allegations moot. The Village responds that it does not matter as to the date, as the date of the injunction granted in the previously litigated case was issued on February 24, 2023, prohibiting the violative act that would have occurred on either date – January 3, 2022, or January 3, 2023. We agree.

Case No. 2024-T-0072

{¶34} R.C. 121.22(I) provides in relevant part:

(I)(1) Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

(2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and . . . reasonable attorney's fees.

{¶35} The trial court's August 19, 2024 judgment entry determined that counts 1 through 6 and 8 of McGrail's complaint were moot, as the Open Government Advocates case had already resulted in an order enjoining the Village from committing the same violations McGrail asserted, based on the same facts and meeting dates. The trial court based its decision relying on *Ohio & I.R. Co. v. Wyandot County Commrs.*, 7 Ohio St. 278, 280 (1857) (the court will not award a peremptory writ of mandamus for conduct the trial court has already enjoined). As the conduct that McGrail sought to prohibit was already enjoined by the trial court's prior order, regardless of the discrepancy between the mistaken meeting date and the actual meeting date, the issue is therefore moot.

{¶36} Accordingly, McGrail's third assignment of error is without merit.

**Fourth Assignment of Error**

{¶37} In his fourth and final assignment of error, McGrail asks this Court to answer the question, "[i]s [t]he Ohio Power Siting Board a court?" Specifically, McGrail asserts that the trial court erred in determining that the executive session held on September 5, 2023, the meeting date in count 7, was for a permissible purpose because it was to

Case No. 2024-T-0072

discuss pending or imminent litigation. McGrail contends that the trial court erred because the Ohio Power Siting Board is not a court, therefore, the Village improperly called executive session. McGrail essentially argues that if the Ohio Power Siting Board is not a court, then any discussion about the application filed with the Ohio Power Siting Board could not constitute pending or imminent court action as it relates to R.C. 121.22(G)(3).

{¶38} R.C. 121.22(G)(3) provides:

> (G) Except as provided in divisions (G)(8) and (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of the following matters:
>
> (3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action. . . .

{¶39} In its brief, the Village notes that R.C. 4906.13(B) gives the Ohio Power Siting Board exclusive authority to adjudicate the complaint and objection to the Clean Energy Future – Trumbull, LLC case.

{¶40} R.C. 4906. 13(B) provides:

> No public agency or political subdivision of this state may require any approval, consent, permit, certificate, or other condition for the construction or operation of a major utility facility or economically significant wind farm authorized by a certificate issued pursuant to Chapter 4906. of the Revised Code. . . .

{¶41} The Ohio Supreme Court retains jurisdiction over Ohio Power Siting Board Proceedings. R.C.4903.12 provides:

> No court other than the supreme court shall have power to review, suspend, or delay any order made by the public utilities commission, or enjoin, restrain, or interfere with the commission or any public utilities commissioner in the

Case No. 2024-T-0072

performance of official duties. A writ of mandamus shall not be issued against the commission or any commissioner by any court other than the supreme court.

{¶42} The Village avers that the executive session held on (the date in count 7) September 5, 2023, was to discuss the Clean Energy Future – Trumbull, LLC case and discuss a recent evidentiary hearing on the matter conducted on August 28, 2023, before Judge Marcelletti at Ohio Power Siting Board in Columbus, Ohio, with the Village solicitor.

{¶43} The Village further asserts that Ohio courts have recognized the policy considerations behind the R.C. 121.22(G)(3) exception to the OMA, citing *State ex rel. Hardin v. Clermont County Bd. of Elections*, 2012-Ohio-2569, ¶ 64 (12th Dist.):

> The legislature clearly contemplated that litigation need not have formally begun to reach a sensitive stage where the public's need to know is outweighed by the public body's need for confidentiality . . .. The term "imminent" is satisfied where the public body has formally committed itself to a litigative solution and assumed a litigative posture. Such a posture is frequently manifested by the public body's decision to commit government resources to the prospective litigation.

*Id.*, quoting *State ex rel. Cincinnati Enquirer v. Hamilton County Commrs.*, 2002-Ohio-2038, ¶ 16.

{¶44} McGrail does not argue the existence of a dispute over a complaint and objection with the Ohio Power Siting Board regarding the Clean Energy Future – Trumbull, LLC case. The trial court's August 19, 2024 judgment entry acknowledged that the objection "involved an ongoing dispute between the Village of Lordstown and [Clean Energy Future – Trumbull, LLC] over [their] construction of an electric generating facility on a residentially zoned parcel of land in disregard of the Village's stop work order." McGrail's contention is that if the Ohio Power Siting Board is not a court, then the

Case No. 2024-T-0072

executive session could not have met the exception in R.C. 121.22(G)(3) as it is did not concern a "court action" as the statute requires.

{¶45} The record indicates that the executive session that is the subject of McGrail's count 7 allegation was for "potential litigation for [Clean Energy Future – Trumbull, LLC] stop-work order . . . ." The meeting minutes, attached to the complaint as Exhibit 5, indicate "potential litigation" was the subject of discussion and no action was taken while in executive session. Complaint, Dkt. 1, p. 14 of Exhibit 5. In its August 19, 2024 judgment entry, the trial court expounded on the origins of the dispute between the Village and Clean Energy Future – Trumbull, LLC:

> The Village Council held an executive session on September 5, 2023 to discuss with their Solicitor the litigation pending before the Ohio Power [Siting] Board ("OPSB") involving a dispute between the Village of Lordstown and [Clean Energy Future – Trumbull, LLC] ("TEC"). Initially, on July 10, 2023, the Village filed an objection to the decision of the OPSB in the case captioned In Re Clean Energy [Future – Trumbull], LLC [Second Amendment Case], Case No. 22-1175-EL-BGA. The objection involved an ongoing dispute between the Village of Lordstown and TEC over TEC's construction of an electric generating facility on a residentially zoned parcel of land in disregard of the Village's stop work order. The Village filed a Complaint against [Clean Energy Future – Trumbull, LLC] on July 24, 202[3 [with] the OPSB seeking an order to enjoin further construction. . . .
>
> A hearing was held August 28, 2023 before Administrative Law Judge Isabel Marcelletti where attorneys for the Village and [Clean Energy Future – Trumbull, LLC] called witnesses and presented evidence to support their positions. Ultimately, Judge Marcelletti ruled against the Village and recommended approving the [Clean Energy Future – Trumbull, LLC's] application to the [Ohio Power Siting Board], which the [Ohio Power Siting Board] approved in a journal entry dated October 19, 2023 ruling. Between the August 28, 2023 hearing and the October 19, 2023 ruling, the Village held the September 5, 2023 executive session at issue herein.

Case No. 2024-T-0072

The essence of the dispute between the Village and Clean Energy Future – Trumbull, LLC pertained to the certificate they received from the Ohio Power Siting Board to construct an electric generating facility. The certificate, according to the Village's complaint, was based on the site being zoned as industrial, when in fact it was zoned residential. Ultimately the Ohio Power Siting Board ruled against the Village. As previously noted, the September 5, 2023 executive session, subject of McGrail's appeal, was held between the Ohio Power Siting Board hearing date and the decision rendered as a result of those proceedings.

{¶46} The First District explained what "pending" court action means within the context of R.C. 121.22, in *State ex rel. Bond v. Montgomery*, 63 Ohio App.3d 728, 737 (1989): "'Pending' court action has been described as that period of time between the inception of the lawsuit and rendition of final judgment. *See Ex parte Craig* (C.A.2, 1921), 274 F. 177."[1] The question appears to turn on whether an action within an administrative agency constitutes court action, for the purposes of R.C. 121.22.

{¶47} The action the Village describes as litigation within the Ohio Power Siting Board and involving Clean Energy Future – Trumbull, LLC, concerned a dispute which began at its inception with a complaint and involved an evidentiary hearing which concluded in a decision reviewable by the Ohio Supreme Court. The Ohio Supreme Court has found that the doctrines of res judicata and collateral estoppel apply to administrative proceedings where parties are afforded "ample opportunity to litigate the issues involved." *Green v. City of Akron*, 1997 WL 625484, *2 (9th Dist. Oct. 1, 1997), citing *Jacobs v.*

---

1. We rely on *Bond v. Montgomery*, 63 Ohio App.3d 728 (1989), which looks at the inception of a lawsuit through the rendering of final judgment to define a "pending" court action. Until the Supreme Court of Ohio provides Ohio courts with further guidance on the issue of what constitutes a 'pending' court action we will follow *Bond* and its progeny.

Case No. 2024-T-0072

*Teledyne, Inc.* 39 Ohio St.3d 168, 169; accord *Superior's Brand Meats, Inc. v. Lindley*, 62 Ohio St.2d 133, 135 (1980). *See also Green* at *3 ("[A]ppellees were represented by counsel at the hearing. They presented evidence and examined witnesses. They have not argued that the [administrative agency] unfairly restricted their opportunity to litigate their case. For these reasons, we find that appellees did have ample opportunity to present their case at the administrative hearing, and that the hearing was the type of proceeding which the Ohio Supreme Court intended *res judicata* to attach.").

{¶48} Similarly, the Supreme Court of Ohio has held that administrative agency decisions resulting from quasi-judicial proceedings, such as those that are conducted "in the nature of legal proceedings, providing notice and an opportunity to introduce testimony through witnesses" may be appealed to the courts. *BC Westlake, Inc. v. Hamilton County Bd. of Revision*, 1998-Ohio-445, ¶ 19. Likewise, the decision from the Ohio Power Siting Board is an appealable decision to the court. The September 5, 2023, executive session was held before the Ohio Power Siting Board issued its decision. R.C. 121.22(G)(3) permits executive session for not only "pending" litigation, but "imminent" litigation, meaning that which has not yet begun. "The definition we adopted . . . something 'about to happen' [-] was not meant to have strictly a temporal meaning. The definition is more elastic because of the protean nature of litigation, in which court action is not always a foregone conclusion." *State ex rel. Cincinnati Enquirer,* 2002-Ohio-2038 at ¶15 (1st Dist.).

{¶49} Based on the foregoing, it appears that the subject litigation discussed during the executive session constituted pending or imminent court action for the

Case No. 2024-T-0072

purposes of R.C. 121.22(G)(3). As such, it cannot be said that the that the executive session held on September 5, 2023, was held for an improper purpose.

{¶50} In conclusion, the trial court properly granted summary judgment, as the executive sessions held in counts 1 through 6 of McGrail's complaint and count 8 were moot, and the executive session subject of count 7 of McGrail's complaint concerned pending or imminent court action, was for a permitted purpose, and therefore exempted by the OMA.

{¶51} McGrail's fourth assignment of error is without merit.

{¶52} Accordingly, we affirm the decision of the Trumbull County Court of Common Pleas.

SCOTT LYNCH, J., concurs,

JOHN J. EKLUND, J., concurs in part and dissents in part with a Dissenting Opinion.

_____

JOHN J. EKLUND, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶53} I concur in the Judgment we announce today with respect to the trial court's decision granting summary judgment for Appellee on Counts One through Six and Count Eight of Appellant's Complaint. But I would reverse the trial court's decision on Count Seven. I disagree with the Court's analysis of Appellant's fourth assignment of error and would remand for further proceedings on Count Seven of Appellant's Complaint.

Case No. 2024-T-0072

{¶54} Today we do something that, as far as I can discern, no court in Ohio has done. We hold that a proceeding before the Ohio Power Siting Board ("OPSB") is a "pending . . . court action" for purposes of R.C. 121.22(G)(3).

{¶55} The OPSB granted to Clean Energy Future-Trumbull, LLC ("TEC") a Certificate of Environmental Compatibility and Public Need ("Certificate") to build an electric generating facility. In 2022, TEC applied to OPSB for an amendment to the Certificate (the "Application"). The Application was entered on the OPSB's docket and assigned a case number. Appellee filed objections with the OPSB and asked the OPSB to stop construction. OPSB scheduled a hearing on the Application. It proceeded before one of the OPSB's Administrative Law Judges. The OPSB is the only entity that can amend or deny a Certificate.

{¶56} Eight days after the hearing, on September 5, 2023, during Appellee's Council Meeting, the Council adjourned into executive session with the Village Solicitor.

{¶57} First, what was discussed in the Village Council's executive sessions on September 5, 2023, is unclear from the record before us. The minutes of the open meeting that day say it was "potential litigation" concerning a stop-work order Appellee had issued. Beyond that we do not know whether that litigation was "imminent." Certainly, there is nothing in the record to guide us. In any event, here Appellee now consistently says the subject of the executive session was the "TEC Case" then pending before the OPSB. The trial court whose judgment we are reviewing in this appeal seems to have adopted that view of the case below.

{¶58} But, while the record does not make clear what, if any litigation was "imminent," we do know what *was* "pending" when the Village Council met in executive

Case No. 2024-T-0072

session on September 5, 2023. It was an OPSB administrative proceeding commenced and underway before a statutory administrative body, not a court. In a very broad sense, it could be considered "pending litigation"; similarly, it could be considered a "case." But it was not a "court action."

{¶59} That a hearing was part of the OPSB process is, to me, of no moment for our present purposes. Whatever procedural trappings attended it, the case was not a "court action"; it was an OPSB proceeding.

{¶60} That the OPSB's ultimate decision was appealable to the Ohio Supreme Court is, to me, of no moment for us, either. It would simply be an appeal from an administrative agency's decision, not a court's decision. The Supreme Court's jurisdiction does not define the nature of the proceedings and decisions it reviews; the legislature does that.

{¶61} Finally, no one in this matter has argued that the prospect of an appeal to the Ohio Supreme Court was present and could therefore constitute an "imminent court case" contemplated by R.C. 121.22(G)(3). We properly decline to examine that issue because it is not before us.

{¶62} Naturally, the Ohio Legislature could have written R.C. 121.22(G)(3) to expand or narrow the exception to open meetings that it creates. It still can. With enough votes, and barring a veto, it would be law. But it did not and to date it has not. We should not re-write the statute.

{¶63} The First District's holding in *State ex rel. Bond v. Montgomery*, 63 Ohio App.3d 728 (1st Dist. 1989), merely provides a definition of what "pending" means in R.C. 121.22(G)(3). We do not need that question answered here – nor do we need to

Case No. 2024-T-0072

follow *Bond*. It is undisputed that *something* was pending when the Village Council went into executive session.

{¶64} The Village Council met in executive session to discuss a pending OPSB case, not a pending (or imminent, so far as the record reveals) court action. Therefore, I would reverse the trial court's judgment as to Count Seven of Appellant's complaint only, affirm the trial court's grant of summary judgment on the remaining Counts, and remand for proceedings accordingly.

Case No. 2024-T-0072

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE SCOTT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs in part and dissents in part
with a Dissenting Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0072